DANIEL GREEN *v.* JOSEPH E. BUTLER, JOSEPH S. LEAVITT, R. MORTON, —— VANDYKE, AND W. POLAND.

REVIEW OF EVIDENCE BY APPELLATE COURT.—If no appeal is taken from an order denying a new trial, the appellate Court cannot review the evidence to determine whether the verdict or findings are sustained by it. The practice is the same in all cases, whether at law or in equity.

PURCHASE OF EQUITY OF REDEMPTION BY MORTGAGEE.—A mortgagee can make a *bona fide* purchase from the mortgagor of the equity of redemption, and thereby become vested with an irredeemable estate, and obtain an absolute ownership of the mortgaged property.

CANCELLATION OF A DEFEASANCE.—Where a deed and defeasance are in separate instruments, thus constituting a mortgage, a purchase of the equity of redemption by the mortgagee from the mortgagor for its full value, and a surrender of the defeasance to the mortgagee to be cancelled, and the retention of it by the mortgagee, is in law a cancellation of the defeasance, though not actually destroyed.

SAME—EFFECT OF.—G. executed to B. a deed absolute on its face, but intended as a security for money. B. subsequently executed an instrument whereby he agreed to reconvey to G. upon payment by G. at a specified day of a certain sum of money due from G. to B., and B., by consent of G., went into possession. Afterwards there was an accounting, and B. purchased of G. his interest in the land, and paid therefor its full value, the money due being a part of the purchase money; and thereupon G. surrendered up to B. the said last named instrument to be cancelled, upon an understanding between the parties that such surrender and cancellation should and would vest the absolute title to the lands in B., and B. continued in possession in pursuance of his purchase. Afterwards G. brought suit against B., claiming that said surrender and cancellation of said instrument did not vest the title in B.; that said conveyance was still only a mortgage; that the indebtedness had been paid by the rents and profits; and asking that B. be adjudged to convey to G. *Held,* that under such circumstances a Court of equity would not compel a conveyance.

WHEN A CONVEYANCE IS A TRUST DEED AND NOT A MORTGAGE.—Where the owner of a tract of land executes an absolute deed of it to another person to enable the other person to mortgage the same to raise money to pay off liens against it, the transaction is not a mortgage, but passes the fee which the grantee holds in trust for the grantor.

DEFEASANCE EXECUTED AFTER DEED. — If a deed is executed, conveying and intended to convey an absolute title, the subsequent execution of a defeasance by the parties will not turn the deed into a mortgage.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This action was brought to compel an accounting and a reconveyance of the property. Plaintiff claimed that the deed and defeasance constituted a mortgage, and that Leavitt, unknown to plaintiff, had paid Butler a large portion of the sum mentioned in the defeasance before the execution of the same, and that the amount thus paid by Leavitt, and the proceeds of the property received by Butler as mortgagee in possession, had satisfied the mortgage, and that Leavitt and Butler had combined together to defraud plaintiff.

The other facts are stated in the opinion of the Court.

*Brooks & Whitney,* for Appellants.

The settled doctrine of equity now is, that a mortgage is mere security for a debt, *and passes only a chattel interest.* That the debt is the principal, and the law the incident; that the mortgage constitutes simply a lien or incumbrance, and that the *equity of redemption* is the real and beneficial estate in the land, which may be sold and conveyed by the mortgagor, subject only to the lien of the mortgage, in any of the ordinary modes of assurance. (*McMillan* v. *Richards,* 9 Cal. 365; *Heffens* v. *Myer,* 13 Cal. 13; 2 Story's Equity, 1,013, 1,015; *Wilson* v. *Troupe,* 2 Cowen, 95; *Alexander* v. *Greenwood,* 24 Cal. 505; *Harlan* v. *Rackerby,* 24 Cal. 561.)

An equity of redemption, or other interest in land, cannot be surrendered except by writing signed by the party. (Chitty on Con. 270; *Varrish* v. *Koons,* Parsons S. Equity, C. 89; *Gouche* v. *Martin,* 9 Watts, 106; *Harrison* v. *Owen,* 1 A. T. K. 520; *Cupit* v. *Jackson,* 13 Price, 721; *Sanders* v. *Leslie,* 2 Ball & Beat. 49; *Dexter* v. *Arnold,* 3 Sum. 152.)

" Once a mortgage, always a mortgage," is a universal rule in equity, and no agreement in the mortgage to change it into an absolute conveyance, upon any condition or event whatever, will be allowed to prevail. (*Clark* v. *Henry,* 2 Cowen, 324; *Wheeland* v. *Sumpty,* 1 Yates, 584; 2 Equity Digest,

1,463–1,466 ; *Wilson* v. *Troupe*, 7 John. C. 25 ; *Holdridge* v. *Gillespie*, 2 John. C. 34 ; *Hicks* v. *Hicks*, 5 Gill. & John. 75.)

So inseparable, indeed, is the equity of redemption from a mortgage, that it cannot be disannexed even by an express agreement of the parties. (2 Story Eq. Jur. 1,019 ; *Flagg* v. *Mann*, 2 Sum. 490 ; *Crane* v. *Bonnet*, 1 Green. C. 264.)

Mere delivery of the defeasance could not operate as a conveyance of the equity of redemption. (*Jackson* v. *Pulver*, 8 John. 370 ; *Jackson* v. *Anderson*, 4 Wend. 474, citing : 2 John. 884 ; 9 John. 55 ; 12 John. 73, 488, 355 ; 2 H. B. C. 260 ; 4 Crois, 497 ; 6 East. 86 ; *Jackson* v. *Paige*, 4 Wend. 585, citing 3 Term Reports, 1 John. C. 340.)

*Taylor & Hastings*, for Respondents.

A mortgagee may always purchase the equity of redemption of the mortgagor, if such purchase be *subsequent* to the making of the mortgage, for an adequate consideration, and free from fraud. (1 Washburn on Real Property, 496, Sec. 24 ; 4 Kent Com. 160, 9th edition ; *Schekell* v. *Hopkins*, 2 Md. Ch. R. 90 ; *Dougherty* v. *McColgan*, 6 Gill. & Johns. 275 ; 18 Ala. 698 ; *Remson* v. *Hay*, 2 Ed. Ch. 535 ; *Russell* v. *Southard*, 12 How. U. S. 154.)

The agreement for the purchase of the mortgagor's interest presented by this record was not made *in* the mortgage, not *cotemporaneous* with the security, but long *subsequent* thereto. All that this point of appellant states, and all that the authorities cited in support of it state, is, that a mortgagee shall not at the *time* of making the mortgage agree for the purchase of the equity of redemption—that any *such* agreement, for very good reasons, is presumed to be fraudulent—a principle which we have no desire to contest. If the agreement for the purchase of the redemptionary interest had been made between Butler and Green at the time of the making the mortgage, the 14th day of August, 1854, there would be some force in the proposition, but the same being made subsequently, on the 27th of February, 1855, it is destitute of application.

The case of *McMillan* v. *Richards*, 9 Cal. 365, cited by appellant, has no bearing upon this issue. The words "the owner of a mortgage in this State can in *no* case become the owner of the mortgaged premises, except by a purchase after sale, under a judicial decree, consummated by conveyance," applied to the facts in that case—*i. e.*, that a mortgage of itself does not convey any estate, but is simply a security—are perfectly true. But the strong expression is, of course, limited to those facts. Obviously, there are *many cases* where the owner of a mortgage can become the owner of the mortgaged property other than by a purchase after sale, under a judicial decree, consummated by conveyance. Can he not take by devise? Can he not receive by gift? Could he not become owner either as heir or next of kin by descent or distribution? Equally can he become owner by a fair and equitable purchase, when the agreement is made subsequent to the mortgage. The rule is clearly stated in Washburn on Real Property— the latest and best work we have on realty :

"If the transaction between the parties be, in fact, a mortgage, its character cannot be affected or changed by any agreement entered into at *the time* between them, as to redemption or other incidents of a mortgage. The doctrine universally applicable is, if once a mortgage, always a mortgage. Nor can it be made otherwise by any agreement of the parties made at *the time* of the execution of the deed, nor upon any contingency whatever.

"*The mortgagee may always purchase the mortgagor's right of redemption, and thus acquire an absolute title.* This, however, will be avoided for fraud, actual or constructive, or for any unconscionable advantage taken by the mortgagee in obtaining it. *It will be sustained if perfectly fair and for an adequate consideration.*" (Washburn on Real Property, Vol. I, p. 496, Secs. 23, 24.)

The surrender and the cancellation of the defeasance, by and with the consent of the mortgagor, for the very purpose of passing the estate, operates in equity to estop the mortgagor from showing the deed absolute to have been intended as

a mortgage, and thus avoids the Statute of Frauds. (Brown on Statutes of Fraud, pp. 60–62, Secs. 60, 61; 1 Hilliard on Real Property, 395, Sec. 17; *Trull* v. *Skinner*, 17 Pick. 214–16; *Harden* v. *Phillips' Academy*, 12 Mass. 464–5; *Mussy* v. *Holt*, 4 Foster N. H. 252; *Wiley* v. *Christ*, 4 Watts' Penn. 199, 200; *Farrar* v. *Farrar*, 4 N. H. 191; *Thomson* v. *Ward*, 1 Id. 9; 1 Green's Ch. 250; 6 Ala. 801; *Mason* v. *Grant*, 21 Maine, 160; *Waters* v. *Randell*, 6 Metcalf, 484; *Baker* v. *Pratt*, 15 Ill. 570, 571; *Holbrook* v. *Terrell*, 9 Pick. 104; *Jackson* v. *Gardner*, 8 Johns. 403; *Stetson* v. *Gulliver*, 2 Cush. 499; *Rice* v. *Rice*, *Rice* v. *Bird*, 4 Pick. 352, and note.)

We do not claim that at *law* the surrender and cancellation of the deed by the grantee revests the title in the grantor; that such an act constituted a technical conveyance at law, signed, sealed and delivered, which passed the interest of Green in the land to Butler. Though numerous authorities of respectability and weight countenance such view, such a cancellation does not operate by way of transfer, nor yet of technical release, but it does operate in equity as an estoppel, not allowing the grantee or the mortgagor to claim any benefit from the surrendered deed, on the one hand, or the surrendered and cancelled defeasance on the other.

By the Court, SAWYER, J.

A large portion of the briefs on both sides is devoted to a discussion of the evidence. But no appeal has been taken from the order denying a new trial, and the parties must be presumed to have been satisfied with the facts as found. Whether they were or not, the appeal is from the judgment alone, and, on such appeal, we cannot review the evidence. The practice is the same in all cases, whether at law or in equity. (*Allen* v. *Fennon*, post.) Whatever doubt there might formerly have been on this point as to cases in equity, there can be none since the passage of the Act of 1861, the first section of which provides "that no distinction as to the mode of taking or perfecting appeals, or as to the

effect of them, shall be made between cases at law and cases in equity, but the provisions of the Practice Act shall apply in like manner to all cases of appeal." (Laws 1861, p. 589.) Nor did the parties, when the appeal was taken, seem to contemplate that we should re-examine the evidence. It is stipulated that certain papers on file shall constitute the statement on appeal (there does not appear to have been any statement on motion for new trial), and the grounds of appeal specified in the statement are, substantially, that the referee erred in his conclusions of law, and, as a consequence, that the judgment is erroneous. No error as to the facts found is alleged in the statement as a ground of appeal.

The referee finds, among other facts, that, prior to the 14th of August, 1854, the plaintiff was in possession of the lands described in the complaint; that on that day, for a valuable consideration, he conveyed the said lands and improvements thereon by a deed, absolute on its face, to the defendant, Butler; that, although the deed was absolute on its face, it was intended as a mortgage, to secure to said defendant certain moneys, due and to grow due, for erecting buildings and improvements thereon, for a firm composed of plaintiff and defendant, Leavitt; that on the 20th of October, 1854, the said firm of Green & Leavitt had an accounting with defendant, Butler, and that upon said accounting it was found and agreed by all parties that said firm was indebted to said Butler for constructing said improvements in the sum of eight thousand five hundred dollars; that on said 20th day of October, said Butler executed and delivered to said Green & Leavitt, a written defeasance, whereby he bound himself, upon the payment by them to him on or before March 1, 1855, the said sum of eight thousand five hundred dollars, to convey, by quitclaim, to said Green & Leavitt, the said premises, and covenanted in said defeasance that if, after said 1st day of March, he should sell said premises he would pay over to said parties any surplus that might arise over his debt and costs; that said defendant, Butler, on the 1st of February, 1855, with the consent of said plaintiff and said defendant, Leavitt,

entered into possession of said premises, and continued in possession till the 27th day of February, 1855.

"That on the said 27th day of February, A. D. 1855, at said city and county, the said plaintiff and the said defendant, Joseph E. Butler, had an accounting and settlement of and concerning the said plaintiff's interest in and to the land described in said complaint, and the improvements then thereon, and of the furniture then in said 'Ocean House;' on which accounting and settlement the said defendant, Joseph E. Butler, paid to the said plaintiff the sum of two thousand dollars, in four promissory notes, for said plaintiff's interest in and to said land and the improvements thereon, and the furniture then in said house, which said notes were subsequently paid; and the said plaintiff then and there, in consideration of said sum of two thousand dollars, surrendered the said written defeasance to the said defendant, Joseph E. Butler, for cancellation, and the same was thereby cancelled as against the said plaintiff."

The only question arising on the record is, as to the effect upon the rights of the parties as to the relief sought in this action, of the surrender of the defeasance to be cancelled under the agreement found by the referee. The principles stated in the numerous cases cited by appellant's counsel are generally admitted to be correct. But there can be no doubt that a mortgagee can make a *bona fide* purchase of the equity of redemption—if, indeed, we may use these terms in the present condition of the law as to mortgages in this State—and thereby acquire an absolute title. The principle is well stated in *Remsen* v. *Hay*, 2 Edw. Ch. Rep. 535, in the following terms: "There is nothing in the policy of the law to prevent a mortgagee from acquiring an absolute ownership by purchase from the mortgagor at any time subsequent to the taking of the mortgage, and by a fresh contract to be made between them. Courts view with jealousy and suspicion any dealings between the mortgagor and mortgagee to extinguish the equity of redemption; but if it be fair and honest on the part of the mortgagee, the purchase will not be disturbed.

76

The law only prohibits a mortgagee from availing himself of a stipulation contained in the mortgage deed, or of some covenant or agreement, forming part of the same transaction with the loan and the taking of the security, by which he shall attempt upon the happening of some future event or contingency to render the estate irredeemable and obtain an absolute ownership. In such cases the maxim applies of once a 'mortgage always a mortgage.' (*Henry* v. *Davis*, 7 John. Ch. R. 40 ; *Clark* v. *Henry*, 2 Cow. 332.) But it cannot interfere with the right to foreclose when the mortgage has become forfeited, nor with any fresh contract which the mortgagor may choose to make with the mortgagee for a sale or relinquishment of the equity of redemption and vesting the latter with an irredeemable estate." There are numerous authorities to the same effect. (1 Wash. Real Prop. p. 496, Secs. 23, 24 ; *Dougherty* v. *McColgan*, 6 Gill. & Johns. 275 ; *Russell* v. *Southard*, 12 How. U. S. C. R. 154 ; *Adams* v. *McKenzie*, 18 Ala. 698.)

Independent of authority, no argument is necessary to show that, upon principle, a mortgagor has the same capacity to contract with reference to his interest in the mortgaged property that he has in respect to any other property. Nor has section two hundred and sixty of the Practice Act, or any of the former decisions in this State relating to mortgages, placed any restriction upon the authority of the mortgagor to make other and further contracts affecting his title to the land, subsequent to the execution of the mortgage. The language of Mr. Justice Field, in *McMillan* v. *Richards*, cited by counsel, that "The owner of a mortgage in this State can in no case become the owner of the mortgaged premises, except by purchase upon sale under judicial decree, consummated by conveyance," must be limited to the question then under discussion. He was simply endeavoring to show that no title passed by the mortgage alone, either before or after default, or could be acquired under it by strict foreclosure, or in any other manner than by a sale under a decree of a Court, and that in such case the title did not vest till consummated by a convey-

ance, after the period for redemption had expired. He had no reference to a contract affecting the title, made by the mortgagor himself subsequent to the making of the mortgage. Reference was only made to the possibility of acquiring title through the mortgage, independent of any further action on the part of the mortgagor.

In this case, according to the finding of the referee, there was a settlement between the plaintiff and defendant Butler, by which the said Butler paid to plaintiff for his interest in the lands and improvements in dispute, and the furniture in the Ocean House, situated on the premises, the sum of two thousand dollars, and the plaintiff, in consideration thereof, surrendered the defeasance to defendant Butler "for cancellation, and the same was thereby cancelled as against the said plaintiff." According to the finding the sum of eight thousand five hundred dollars was secured on the premises, which premises, on said 27th of February, 1855, were only worth seven thousand five hundred dollars.

The referee found that there was no fraud in any of the particulars charged in the complaint, and the finding in respect to the charges of fraud are sufficiently specific, as it negatives every allegation of fraud.

He does not say, in so many words, in his finding, that the mortgage debt remained unpaid; but it is the necessary result of the findings that such was the case, and that the full amount was due. If we were permitted to re-examine the evidence in the record, we are not prepared to say he erred. The parties, at the time of the execution of the defeasance, struck a balance themselves, and the evidence to disturb their own settlement is exceedingly loose and unsatisfactory.

The surrender of the defeasance to be cancelled with an intent to vest the entire estate in Butler, did not in law convert the mortgage into a deed or operate as a conveyance of Green's title to Butler. Whether it operated by way of estoppel in equity, to vest the title in Butler, or not, it is not now necessary to determine. The deed to Butler being absolute on its face, the title upon the record is apparently in him.

The plaintiff seeks the aid of a Court of equity to compel a conveyance of the land in controversy on the ground that the conveyance to Butler was a mortgage, and that the mortgage has been satisfied. The defendant Butler contests the claim and shows that, instead of the mortgage being satisfied, he had paid the full value of the premises, with the understanding that he had purchased the plaintiff's interest, and that the defeasance was surrendered to be cancelled in pursuance of the agreement between the parties. Butler afterward continued in possession as owner.

If Butler did not obtain the title in law, he paid for it its full value, and supposed the title to be vested in him by the surrender and cancellation of the defeasance with the intention of so vesting it. The surrender of the defeasance to Butler to be cancelled, and the retention of it by him, is in law a cancellation of that instrument, though not actually destroyed.

A Court of equity will not aid plaintiff to obtain a conveyance, under the circumstances of this case, in direct violation of his own agreement, and in fraud of the rights of defendant Butler.

Upon the allegations of the plaintiff's complaint, it is at least extremely doubtful whether the conveyance to Butler can be regarded as a mortgage at all. The distinct allegations of the complaint are, not that the land was conveyed by plaintiff to secure the amount due Butler, but that Butler represented that there were certain mechanics' liens on the Ocean House which the claimants were pressing and threatening to foreclose—that " said Butler was unable to procure the money from his own means to satisfy the said demands, and could not procure the money for that purpose, unless the said plaintiff would convey to the said Butler the said twenty-five acres of land, in order that the said Butler might mortgage the said land and buildings to procure the necessary funds; and that the said plaintiff, confiding, etc., did, on the said 14th day of August, 1854, make, execute and deliver to the said Butler a deed of the said twenty-five acres of land, for the purpose aforesaid, and not absolutely, nor for any other purpose," and

plaintiff's counsel contends that the testimony really established these very allegations, and nothing more, with respect to the object of the conveyance at the time; and if we could look at the testimony, it does seem to tend strongly in that direction. Now if this was the only object of the conveyance at the time it was made, it certainly was not at that time in any sense a mortgage. It was a conveyance of the title to Butler, not to secure his demand, but to enable Butler to mortgage it to raise money to pay off the liens of the mechanics. And such a conveyance certainly passed the fee at the time. True, Butler would have held the legal title in trust for plaintiff, but upon what principle can it be said that afterwards, in October following, the execution of the instrument, which has been called a defeasance—an entirely distinct transaction—transmuted the original conveyance in fee into a mortgage? In *Trull* v. *Skinner*, 17 Pick. 216, it was held that where a deed was executed and at a subsequent time a defeasance was also executed, the deed and defeasance subsequently executed did not together constitute a mortgage, because the defeasance was not executed at the same time with the deed, and was not a part of one and the same transaction. From the execution of the instrument called a defeasance, and the facts found by the referee, it is evident that the parties, at the time of the execution of the defeasance, intended to make the two instruments serve the purpose of a mortgage, whatever the legal effect of the transactions might be, as they also intended to vest full title in Butler, by the subsequent surrender of the defeasance. The referee found the transaction to be a mortgage, contrary, perhaps, to these allegations of the complaint, and against the protest of the plaintiff. If not a mortgage, the legal title is certainly in the defendant, Butler.

But it is not necessary to determine, whether upon the facts alleged in the complaint, the two instruments in law constituted a mortgage or not; for in either view, taken in connection with the other findings, we think the plaintiff is not entitled to any relief, upon the case made by the record.

The judgment is therefore affirmed.