DUBBELS, APPELLANT, *v*. THOMPSON, RESPONDENT.

(No. 3,478.)

(Submitted September 21, 1914. Decided November 5, 1914.)

[143 Pac. 986.]

*Mortgages—Real Property—Conveyance by Mortgagor to Mortgagee—Effect—Extinguishment of Lien—Title—Estoppel—Burden of Proof—Fraudulent Conveyances.*

Real Estate—Mortgages—Conveyance by Mortgagor to Mortgagee—Effect.
1.  As between the parties to a real estate mortgage, a deed to the property by the mortgagor to the mortgagee does not of itself extinguish the lien, the result of such a transaction depending upon the intention with which it was made, which may be shown by the recitals in the instrument or by a separate agreement in writing, or·may be ascertained from parol evidence of the circumstances accompanying the transaction.

[As to the maxim "Once a mortgage always a mortgage," see note in 131 Am. St. Rep. 914.]

Same—Extinguishment of Lien—Statutes.
2.  *Semble:* It would seem from the language of section 5727, Rev. Codes, that in order to be effective to extinguish a mortgage lien through the agency of a sale of the property to the mortgagee, it must be made for that purpose and the conveyance must disclose such fact.

[As to validity of agreement by mortgagor, to convey premises to mortgagee in consideration of release from liability under mortgage, see note in Ann. Cas. 1913C, 1243; Ann. Cas. 1914C, 926.]

Same—Conveyance of Property to Mortgagee—Duty of Purchaser from Latter.
3.  Where title to realty is acquired by deed from a mortgagor to the mortgagee, not expressing the purpose of it, the person taking from the latter is bound at his peril to ascertain whether the conveyance from the. mortgagor to the mortgagee was intended as a final adjustment of their rights.

Same—Conveyances—Title—Estoppel.
4.  Where a mortgagee by warranty deed mistakenly reconveyed to the mortgagor the mortgaged property after transfer to him by the latter, thus enabling his grantee to convey title to a third person, he was estopped to assert that such third person was bound at his peril to ascertain whether his mortgage lien had been extinguished.

[As to revival of mortgage when satisfied by mistake, see note in 5 Am. St. Rep. 703.]

Same—Deeds—Validity—Burden of Proof.
5.  One who attacks the validity of a duly executed deed has the burden of proof.

Same—Fraudulent Conveyances—Burden of Proof.
6.  T. executed to D. a mortgage upon real property. On default of payment of the note to secure which it was given, T. by warranty deed transferred the property to D., who did not formally release the mortgage. D. later mistakenly reconveyed to T., who knew nothing of this conveyance until delivery of it to him by the clerk

after recording. T. thereafter transferred to his father, a nonresi-
dent, who was not shown to have had any knowledge of the transfer
to him. In a suit by D. to foreclose the mortgage, evidence *held* to
disclose that the latter transaction was fictitious, and that in the
absence of any evidence on the part of T.'s father in explanation of
it, a judgment in his favor was erroneous.

*Appeal from District Court, Musselshell County; Charles L.
Crum, Judge.*

Action by John Dubbels against Carl N. Thompson and others.
From a judgment in favor of defendant K. Thompson and an
order denying him a new trial, plaintiff appeals. Reversed and
remanded.

*Messrs. Boarman & Boarman,* for Appellant, and *Mr. Henry
C. Smith,* of Counsel, submitted a brief; *Mr. Smith* argued the
cause orally.

*Mr. Thomas J. Mathews,* for Respondent, submitted a brief
and argued the cause orally; *Mr. Carl N. Thompson,* of Coun-
sel.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

This action was brought to obtain foreclosure of a mortgage
upon a lot and the buildings thereon, situate at Roundup, in
Musselshell county, executed to plaintiff by defendants Carl N.
Thompson and his wife, Ida M. Thompson, to secure the pay-
ment of a promissory note for $700. The note was executed by
Carl N. Thompson on March 1, 1910, and was payable at the
end of one year, with interest at eight per cent per annum. The
mortgage was executed on June 10 following and was recorded
August 5. Default having been made in the payment of the
note, on April 18, 1912, Carl N. Thompson and wife executed
and delivered to plaintiff their warranty deed conveying to him
the mortgaged property. The consideration mentioned in this
deed was $825.55, the amount of the note. It was recorded two
days later. The mortgage was not formally released. On July

1 the plaintiff and his wife executed to defendant Carl N. Thompson and his wife their warranty deed conveying the property to them. This deed was mailed by plaintiff to the county clerk of Musselshell county, with the request that the clerk record it and deliver it to Thompson, which he did. It was filed for record on July 6, at 9:05 A. M. The consideration named was the same as that named in the other deed. The first knowledge Thompson and his wife had of this deed was its delivery to them by the clerk. When the delivery was made does not appear. On July 8 Thompson and his wife conveyed the property by warranty deed to K. Thompson for an ostensible consideration of $1,300 in cash. This deed was put on record on July 18, and prior to the commencement of this action. The complaint alleges that defendants K. Thompson and Weaver claim some interest in the property, but that such interest, if any they have, is subject to the lien of plaintiff's mortgage. There is in the record what purports to be the separate answer of defendant K. Thompson, in which it is alleged that he became the purchaser of the property under the deed executed to him by Carl N. Thompson and his wife on July 8, 1912, paying therefor the consideration named, without notice that plaintiff had or claimed any interest therein, after he had procured an abstract of the title and had ascertained that the mortgage given to plaintiff by Carl N. Thompson had been discharged. Weaver filed a joint answer with Carl Thompson and Ida, his wife, but claimed no interest in the property. The trial court determined the plaintiff was not entitled to any relief and dismissed the action as to K. Thompson. It granted plaintiff a personal judgment against defendant Carl N. Thompson for the amount of the note with interest and costs. The plaintiff has appealed from the judgment and order denying his motion for a new trial.

There was no conflict in the evidence. In addition to a disclosure of the conveyances in the order in which they were made, as stated above, these facts appear: Carl N. Thompson is an attorney at law and resides at Roundup. The plaintiff resides at Guttenberg, Iowa. K. Thompson resides at Sioux Falls, South

Dakota. The deed to plaintiff by Thompson and wife was not made for the purpose of discharging the mortgage indebtedness, nor was it accepted for that purpose. It was intended to save the expense of foreclosure in case payment should not be made by Thompson on or before the expiration of a year from the date of it, the real consideration being an extension of time for the payment of Thompson's note for one year. At the time it was executed, it was understood that plaintiff should execute an agreement in writing under the terms of which the time of payment was to be extended for one year, whereupon, if payment should be made, he would reconvey the property to Thompson. The agreement was not executed by the plaintiff, but he retained the note. The plaintiff testified that he consented to the arrangement, upon the condition that Thompson would turn over to him all rent earned by the property from and after May 1, 1912, assign to him the insurance upon it, and secure the release of a second mortgage held upon the property by Weaver, but that Thompson failed to comply with these conditions. At that time plaintiff was visiting Roundup. After the deed was delivered to him he personally delivered it to the clerk for record. On June 10, 1912, he wrote Thompson, pressing for payment on or before the end of June and threatening foreclosure of the mortgage, assigning as his reason that Thomspon had not complied with the conditions upon which the agreement for an extension of time had been made and therefore was not entitled to delay payment further. On June 12 Thompson replied, stating in substance that he was doing his best to meet his obligations to plaintiff and other creditors, but that so far he had not been able to meet them, and that he would have to let plaintiff pursue his own course. Plaintiff thereupon, to clear the record, as he says, so that it might not appear as though he was trying to foreclose a mortgage upon his own property, and as a preliminary step to the institution of this action, executed and delivered the deed dated July 1, as heretofore stated, without consideration, and for no other purpose. On May 5, 1911, Carl N. Thompson mailed to plaintiff his check upon a bank at Roundup

for $761 as payment in full of the note. This check was presented to the bank for payment on September 26 following, but was refused on "account insufficient funds." Although it was not paid, plaintiff retained it in his possession and produced it at the trial. It incidentally appears that K. Thompson is the father of Carl N. Thompson. The separate answer purporting to be his was verified by Carl N. Thompson, who appeared as his counsel. He did not appear at the trial nor was his deposition taken, it appearing from a statement made by his counsel during the trial that he had been unable to obtain the deposition.

As between the plaintiff and defendant Carl N. Thompson, the deed dated April 18, 1912, under the facts disclosed, did not [1] extinguish the mortgage. It is a well-settled rule that as between the parties, the result of such a transaction depends upon the intention which prompts it. This intention may be shown by the recitals in the deed itself, or by a separate agreement in writing, or it may be ascertained from parol evidence of the circumstances accompanying the transaction—such as that the mortgagee retains the evidences of the debt, having accepted the deed as additional security, or that he does not formally release the mortgage, or assigns it to a *bona fide* purchaser, representing that it is a valid, subsisting security. (*Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76; *Factors & Traders' Ins. Co.* v. *Murphy,* 111 U. S. 738, 28 L. Ed. 582, 4 Sup. Ct. Rep. 679; *Worcester Nat. Bank* v. *Cheeney,* 87 Ill. 602; *McCrory* v. *Little,* 136 Ind. 86, 35 N. E. 836; *Gray* v. *Nelson,* 77 Iowa, 63, 41 N. W. 566; Warvelle on Abstracts, sec. 347; Jones on Mortgages, sec. 848.)

Counsel for the plaintiff argue that the uncanceled mortgage upon the record was sufficient notice to put K. Thompson on inquiry, and hence that when he accepted the deed from Carl N. Thompson he had notice that plaintiff's mortgage lien had not been extinguished. But for the subsequent deed from plaintiff and his wife to Carl N. Thompson and his wife, the argument would be plausible. Section 5727 of the Revised Codes declares: [2] "The sale of any property on which there is a lien, in satis-

faction of the claim secured thereby  *  *  *  extinguishes the lien thereon.'' Upon the face of it, the meaning of this section seems to be that, in order to be effective to extinguish the lien of the mortgage, a sale by the mortgagor to the mortgagee must be for that purpose, and that the evidence of the sale—the conveyance—must disclose the fact. The sale must be ''in satisfaction of the claim secured'' by the lien. This notion is supported somewhat by the fact that in sections 5752 and 5753 we find prescribed specific methods by which the lien may be discharged.

Under section 5752 this may be accomplished by an entry on the margin of the record by the mortgagee, or his personal representative or assignee, over his signature made in the presence of the clerk and witnessed by him. Under section 5753 the satisfaction may be entered by the clerk upon his receipt of the certificate therein described, which, under the following section, he must then record at length. In either case the discharge is effective. If this is the theory of section 5727, then it would seem to have been the purpose of the legislature in enacting it to leave open to inquiry the status of the mortgage lien in every case in which the evidence of the sale does not express upon its face the intention of it. Upon this assumption, a deed from the [3] mortgagor to the mortgagee not expressing the purpose of it leaves the record equivocal in meaning, and persons taking the title from the mortgagee are bound at their peril to ascertain by inquiry whether the conveyance was intended as a final adjustment of the rights of the parties. The case of *Swain* v. *McMillan,* 30 Mont. 433, 76 Pac. 943, cited by counsel for respondent as conclusive of the question suggested by the argument of counsel for the plaintiff, is not in point; nor is it necessary for us to decide definitely in this case the question presented. By their deed to Carl N. Thompson and wife, the plaintiff and his wife solemnly declared to all the world that they had vested their grantees with a clear title, free from any lawful claim not only by themselves but by any other person whomsoever. (Rev. Codes, sec. 4621.) And though plaintiff's undoubted purpose was to clear the title so that he could—as he erroneously supposed—

[4]   more conveniently foreclose his lien, he cannot now say that anyone acquiring title from the mortgagor was bound at his peril to ascertain that his lien had been extinguished. To permit him to do this would be to permit him to allege his own negligence as a ground for relief. This he cannot do. (*Fredericks* v. *Davis,* 3 Mont. 251.)

The conduct of Carl N. Thompson was indefensible from any point of view and merits condemnation; for though it be assumed [5, 6]   that K. Thompson was entirely innocent of wrong and acquired the title in the utmost good faith, paying the consideration mentioned in the deed, manifestly the purpose of Carl N. Thompson was to defeat the plaintiff in his effort to recover the money due him. The act of the plaintiff, though the result of ignorance or inexcusable carelessness, furnished no justification or excuse. We are thus brought to a consideration of the question whether, from any point of view, the facts disclose a case upon which plaintiff is entitled to relief. Carl N. Thompson was in financial straits. Though doubtless surprised by the receipt of plaintiff's deed from the clerk, he must at once have conceived the plan to defeat the foreclosure proceeding which the plaintiff had foreshadowed in his letter of June 10, 1912. Within the two following days the plan was carried out. During that brief period of time he made the contract of sale to his father, who resided nearly a thousand miles away, after the latter had determined to purchase the property and had procured an abstract of title to ascertain whether it was free from encumbrance. There is no suggestion in the evidence that the father was in Roundup at that time or ever had been there. If he was and had no notice of the purpose of his son, he was grossly deceived by the son. If he knew the situation, then we have the spectacle of the father joining with the son in the perpetration of a fraud. If he was not in Roundup, we must accept the improbable—nay, the impossible—as a fact, *viz.,* that the contract was made by mail or telegram, that the abstract was obtained, and the deed executed and delivered, within the time intervening between 9:05 o'clock on July 6 and sometime

during the day of July 8. That it was not delivered to the
clerk for the father after filing and record is clearly inferable
from the fact that while it was acknowledged before the clerk
on July 8, it was not filed for record until July 18. The answer
of K. Thompson was prepared and verified by Carl N. Thompson.
son. K. Thompson was not present at the trial. Only inci-
dentally did it appear that there is such a person. Being asked
on his examination whether he knew the Thompsons, father and
son, the plaintiff, after stating that he knew Carl N. Thompson,
said: "I never saw K. Thompson, his father." This is the only
reference to him by name in the record, except that Mr. Mathews,
who was associated with Carl N. Thompson, as counsel, as an
explanation of his offer in evidence of the record of the deed
instead of the original, said: "This deed is in the possession of
K. Thompson  *  *  *  and had we been able to get his deposi-
tion, the deed would have been produced here." It appears
incidentally from the record that there had been ample oppor-
tunity to secure the deposition of K. Thompson. Carl N. Thomp-
son, through counsel of record and present at the trial, main-
tained silence throughout, and did not even claim or attempt
to show that the mortgage debt had been paid. As between
the parties or their successors in interest by a subsequent title,
the recitals in a written instrument are conclusively presumed
to be true, except the recital of a consideration (Rev. Codes, sec.
7961); and as to a consideration, the recital is deemed *prima
facie* to be true (sec. 7962). A deed duly executed is presumed
to have been delivered at its date (sec. 4597.) One who attacks
the validity of such an instrument must sustain the burden of
proof. (*Hull* v. *Diehl,* 21 Mont. 71, 52 Pac. 782.) While,
therefore, upon the assumption that K. Thompson was in fact
a purchaser from Carl N. Thompson as the deed on its face
shows, the evidence is insufficient to warrant the conclusion that
K. Thompson had knowledge of the purpose of Carl N. Thomp-
son, we think it sufficient to support an inference that the trans-
action was wholly fictitious; that K. Thompson knew nothing
of it, and that it ought to be overturned for that reason. In

any event, it is sufficient to call for explanation by this defendant as to whether in fact it took place as Carl N. Thompson claims.

Ordinarily, in such a case as this, we would order the district court to set aside the judgment and enter a decree for plaintiff. Under the peculiar circumstances disclosed by the record, however, we deem it the better and safer course to direct a new trial. Accordingly, the judgment and order are reversed and the district court is directed to award the plaintiff a new trial.

*Reversed and remanded.*

MR. JUSTICE SANNER concurs.

MR. JUSTICE HOLLOWAY, being absent, takes no part in the foregoing decision.