DOGGETT, RESPONDENT, *v.* JOHNSON, APPELLANT.

(No. 6,249.)

(Submitted March 14, 1928. Decided May 7, 1928.)

[267 Pac. 292.]

*Quieting Title—Mortgages—Sale by Mortgagor of Interest in Mortgaged Premises to Mortgagee—Effect of Transaction—Writ of Possession—Decree may Direct Issuance of Writ.*

Real Estate Mortgages—Mortgagor may, After Default, Convey His Interest in Mortgaged Premises to Mortgagee—Transaction Upheld, When.
1. A mortgagor of lands may, after default, convey all his right and interest in the mortgaged premises to the mortgagee, provided the transaction is free from fraud and no unconscionable advantage is taken of the mortgagor's position by the mortgagee; and where such a transaction was free from these objectionable features, the relation of mortgagor and mortgagee was thereby terminated.

———

1. See 18 Cal. Jur. 70; 19 R. C. L. 387.

[82 Mont. 338.]

Same—Sale of Mortgaged Premises by Mortgagor to Mortgagee Relin-
quishes Equity and Right of Redemption.
2. Where a mortgagor of real property sells all his right and
interest in the mortgaged premises to the mortgagee, he thereby
relinquishes his equity of redemption, his right of redemption and
his right to insist upon a statutory foreclosure and sale thereunder.

Same—"Once a Mortgage Always a Mortgage"—When Mortgage Ceases
to be Such.
3. The maxim "once a mortgage, always a mortgage" does not
obtain where the parties to it agree to treat it differently.

Same—Quieting Title—Decree may Direct Issuance of Writ of Posses-
sion, When.
4. While a judgment in favor of plaintiff, in an action to quiet
title, out of possession, need not direct the issuance of a writ of
possession, he may have such a writ whether the judgment so
provides or not; therefore defendant may not complain of the in-
clusion of an order in the judgment directing its issuance.

[1–3]   Mortgages, 41 C. J., sec. 863, p. 771, n. 9; sec. 868, p. 774,
n. 66; sec. 870, p. 776, n. 89.
[4]   Quieting Title, 32 Cyc., p. 1378, n. 70.

*Appeal from District Court, Broadwater County, in the
Fourteenth Judicial District; B. B. Law, Judge of the Ninth
District, presiding.*

SUIT by Jefferson D. Doggett against John H. Johnson and
others. Decree for plaintiff and defendant named appeals.
Affirmed.

*Mr. Frank W. Mettler,* for Appellant, submitted a brief and
argued the cause orally.

*Mr. Wm. Scallon* and *Mr. F. T. Hooks,* for Respondent, sub-
mitted a brief and argued the cause orally.

HONORABLE JAMES M. SELF, District Judge, sitting
in place of MR. JUSTICE MATTHEWS, disqualified, de-
livered the opinion of the court.

This is an appeal from a final judgment and decree of the
district court of Broadwater county in favor of the plain-

3. Once a mortgage always a mortgage, see note in 131 Am. St.
Rep. 916. See, also, 19 R. C. L. 386.
4. Writ of assistance to enforce decree for possession, see note in
Ann. Cas. 1915B, 1095. See, also, 22 Cal. Jur. 189, 194.

tiff, Jefferson D. Doggett, and against the defendant John H. Johnson, made and entered on the eleventh day of March, 1927, quieting title in the plaintiff to the real estate in controversy in the action and decreeing possession thereof.

Margaret Glenn was the owner in fee of the real estate involved in this action and continued to be such owner until her death in January, 1917. On February 28, 1914, Margaret Glenn leased the real estate to the defendant John H. Johnson for a term of three years, in consideration of a cash rental of $700 per annum, together with other stipulated conditions to be performed by the defendant.

The lease contained the following provision: "It is further understood and agreed by and between the parties hereto that, if the party of the first part shall have an opportunity to sell the property herein described during the term of this lease, she shall so notify the party of the second part in writing, addressed to him at Toston, Montana, and the said party of the second part shall have the refusal for thirty (30) days of purchasing said property at and for the prices offered by any other party."

The defendant Johnson desired to buy the leased premises, and Margaret Glenn, on February 15, 1917, through her agent, offered to sell the same to him for $20,000. The defendant made several unsuccessful attempts to borrow sufficient money with which to buy them. Thereafter the plaintiff, Jefferson D. Doggett, and the defendant John H. Johnson met and, on February 20, 1917, the defendant Johnson by an instrument in writing, assigned his lease and all his right, title and interest in the same to the plaintiff, Doggett, in consideration of $1 and other good and valuable considerations, and thereby authorizing the plaintiff, in the defendant's name or otherwise, but at his own cost and expense, to enforce the same according to the tenor thereof, and to take all measures which might be necessary so to do. This assignment was approved by both the administrator of the estate of Margaret Glenn and by the court.

On February 21, 1917, the plaintiff and his wife entered

into a written contract to sell, and the defendant John H. Johnson agreed to buy, said premises for the sum of $20,000, payable in twenty annual installments of $1,000, the deferred payments to bear seven per cent interest from date until paid. At the same time the plaintiff and his wife executed a deed to the premises, in favor of the defendant John H. Johnson, which was placed in escrow and to be delivered to the defendant John H. Johnson when he made all payments provided by the contract of sale and purchase. The contract also provided that time was of the essence of the agreement, and that, if default in any payment be made by the defendant John H. Johnson, and the same continue for a period of sixty days after notice, the plaintiff should have immediate possession of the property and the defendant John H. Johnson would lose all right thereto, and that all sums theretofore paid should be retained by the plaintiff as rent and as fixed, settled and liquidated damages.

At the time of the execution of the contract of sale and purchase and deed, an escrow agreement was executed by the plaintiff and his wife, and the defendant John H. Johnson. The contract and the deed were placed in escrow with J. Miller Smith, and to be held by him for a period of ninety days, and, if the administrator's deed was executed and delivered to the plaintiff, then the contract was to become effective. The escrow memorandum also provided that, if the administrator's deed was not executed and delivered within ninety days after February 21, 1917, the contract should be destroyed and the deed returned to the plaintiff.

On March 31, 1917, pursuant to an order of court, the administrator of the Glenn estate executed and delivered to the plaintiff, Jefferson D. Doggett, an administrator's deed to the real estate in consideration of $19,000 paid by the plaintiff to the estate. Thereupon, pursuant to the escrow memorandum, J. Miller Smith delivered one copy of the contract of sale to Jefferson D. Doggett and held one copy for John H. Johnson, and the third copy, together with the deed, abstract, and escrow memorandum, was delivered to the State Bank of Town-

send, Townsend, Montana, to be held in escrow according to the terms of the contract of sale.

On March 5, 1921, the plaintiff and his wife mortgaged the same property to one H. C. Good for a loan to the plaintiff of $10,000, which mortgage was paid and satisfied of record on November 19, 1924.

On April 1, 1922, the plaintiff and the defendant duly executed a written "supplemental agreement" which recites, among other things, that the defendant conveyed to the plaintiff the real estate described therein, and that the deed was given in lieu of a mortgage to secure the repayment of $20,000 loaned by the plaintiff to the defendant, and that the plaintiff executed a deed to be delivered to the defendant in accordance with the terms of the contract of sale and escrow agreement dated February 21, 1917. In the supplemental agreement the defendant confesses his default and failure to perform his part of all prior agreements, and yields, relinquishes and delivers possession of the premises to the plaintiff as fully as upon a foreclosure of a mortgage and a sale thereof on an order of sale on a decree of foreclosure and delivery of a certificate of sale. The plaintiff then leases the premises to the defendant for one year, during which period of time the defendant is given the further privilege of paying all money past due, and to become due, on the contract dated February 21, 1917, and, if those payments are made, the original contract shall continue in force according to its terms.

The agreement further provides that, if the defendant fail to make the payments referred to during the one year agreed to be the defendant's year of redemption, then all the rights of the defendant, including his equity of redemption and the right of redemption, shall be forever barred and foreclosed, and that the defendant will then yield the quiet and peaceable possession of the leased premises to the plaintiff.

On April 5, 1923, the plaintiff and his wife leased to the defendant John H. Johnson and to Elmer Johnson and Harry Johnson the same premises involved in this action for a term

ending March 1, 1924, for one-third of all crops growing thereon, etc. The lease provided, among other things, that John H. Johnson, Elmer Johnson, and Harry Johnson should have the privilege and option to buy said leased premises at any time during the term of the lease for $23,651.43, providing, also, that the crop rentals should be deducted from the purchase price. Further provision was made that, if the plaintiff and lessor should receive a federal farm loan on the premises, the amount of such loan should be deducted from the agreed purchase price.

The defendant and appellant specifies fifty-six errors having been made by the trial court; nevertheless, both the plaintiff and the defendant agree that "the sole question in this case is whether or not the transactions between the plaintiff, Jefferson D. Doggett, and the defendant John H. Johnson were those of mortgagor and mortgagee."

In determining this question, answer to which counsel agree is decisive of this action, it is necessary to consider sections 8230, 8238 and 8597, Revised Codes of 1921:

"8230. All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from lien, are void."

"8238. Every person, having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

"8597. Except where it is otherwise declared, the provisions of sections 7581 to 8596 of this Code, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on interpretation of contracts; and the benefit thereof may be waived by any party entitled thereto, unless such waiver be against public policy."

The defendant contends that the relation of mortgagor [1-3] and mortgagee arises out of the whole transaction as

disclosed by the record, and that "once a mortgage always a mortgage."

This court, in *Bowen* v. *First State Bank,* 69 Mont. 223, 221 Pac. 527, determined that " 'The maxim "once a mortgage always a mortgage," does not prohibit the mortgagor from selling or releasing his equity of redemption to the mortgagee by a separate and distinct contract entered into in good faith and for a good consideration.' " (19 R. C. L. 386.)

"A release or conveyance of the mortgagor's interest in the mortgaged land, made subsequent to the mortgage, after a default in complying with a condition thereof, will be sustained, if supported by a sufficient consideration, and where there is no showing of fraud, oppression, or undue advantage. (*Watson* v. *Edwards,* 105 Cal. 70, 38 Pac. 527; *Seymour* v. *Mackay,* 126 Ill. 341, 352, 18 N. E. 552. See, also, extended note to *Bradbury* v. *Davenport,* 114 Cal. 593, in 55 Am. St. Rep. 92, 46 Pac. 1062)." See, also, *First Nat. Bank* v. *Bell S. & C. Co.,* 8 Mont. 32, 19 Pac. 403; Id., 156 U. S. 470, 39 L. Ed. 497, 15 Sup. Ct. Rep. 440; *Gassert* v. *Strong,* 38 Mont. 18, 98 Pac. 497; *Dubbels* v. *Thompson,* 49 Mont. 550, 143 Pac. 986; 41 C. J. 770, 772.

In *Watson* v. *Edwards,* supra, the court said: "Appellant contends that he should have had judgment, because the original transaction between Sullivan and Clark was, in law, a mortgage, and that its character as a mortgage was not changed, and could not have been changed, by the subsequent acts of a surrender of the defeasance, the yielding up of the note, the discharge of the debt, etc.; and that, in order to make such a transfer valid, there must be some new consideration from the mortgagee to the mortgagor. This contention cannot, in our opinion, be successfully maintained. A mortgagor may sell and convey all his right and interest in the mortgaged premises to the mortgagee where the transaction is fair, honest, and without fraud, and where no unconscionable advantage has been taken of his position by the mortgagee. It would be surprising if two men in their senses, and with their eyes open, could not

[82 Mont. 338.]

make such a contract. The doctrine 'once a mortgage, always a mortgage,' does not refer to future contracts. In Washburn on Real Property it is said that the character of a mortgage cannot be changed 'by an agreement of the parties made at the time of the execution of the deed,' and that 'equity will not admit of a mortgagee embarrassing or defeating his right to redeem the estate by any agreement which he may be induced to enter into in order to effect a loan, * * * and that 'the mortgagee may always purchase the mortgagor's right of redemption, and thus acquire an absolute title.' (Volume 2 (5th Ed.) top paging 65, 66, §§ 23, 24.) Section 2889 of the Civil Code does not change the rule. The case at bar is in principle exactly like the case of *Green* v. *Butler,* 26 Cal. 595. In that case Justice Sawyer, speaking for the court, after noticing a number of authorities to the point, says: 'Independent of authority, no argument is necessary to show that upon principle a mortgagor has the same capacity to contract with reference to his interest in the mortgaged premises that he has with reference to any other property.' The only difference between that case and the one at bar is that in the former case there was some consideration between the parties in addition to the mortgage debt; but the kind or character of the consideration can make no difference if it be, as in the case at bar, fair, and adequate. There was no advantage taken of the mortgagor by the mortgagee." (See, also, *Cortelyou* v. *Vogel,* 51 Cal. App. 785, 197 Pac. 968; *Haynes* v. *Rosenfield,* 99 Okl. 158, 225 Pac. 975; *Baldwin* v. *American Trading Co.,* 76 Cal. App. 80, 243 Pac. 710; *Thompson* v. *Mansfield* (Cal. App.), 258 Pac. 702; *Peugh* v. *Davis,* 96 U. S. 332, 24 L. Ed. 775; 18 Cal. Jur. 69, 73.)

The plaintiff and the defendant agree that the "supplemental agreement" is not a correct statement of the transaction between the plaintiff and the defendant. It is conceded that the defendant did not make, execute, and deliver to the plaintiff a warranty deed, or any deed, conveying to plaintiff the real estate involved in this action; consequently, the recitals in the

supplemental agreement that ''said deed was given in lieu of a mortgage on said premises to secure the repayment of the sum of $20,000 loaned by the said Jefferson D. Doggett'' to the defendant John H. Johnson must be equally incorrect, and, likewise, all inferences arising from such erroneous recitals. The information used to formulate the supplemental agreement was given by the defendant John H. Johnson to the attorney who prepared it. When the supplemental agreement was submitted to the plaintiff for his signature and acknowledgment, he hesitated to sign it and stated to counsel that it was wrong and did not state the facts.

Eminent counsel, called as a witness, testified that ''at the time Mr. Doggett read the agreement he stated it did not contain a correct recitation and history of their transactions, and asked me concerning the condition; but as long as it embodied what their agreement was for the present year, and that Mr. Johnson was then operating the ranch under the agreement and had gone back to the ranch, I told Mr. Doggett I didn't think that it was material, suggesting that it embodied the agreement that he wanted to the effect Mr. Johnson was to have the ranch for that year and give it up at the expiration of the term fixed in the supplemental agreement, and, rather than get Mr. Johnson back to resign, Mr. Doggett finally signed the agreement as it then stood.''

Assuming the relation of mortgagor and mortgagee had arisen between the plaintiff and the defendant by reason of the whole transaction, including the assignment to the plaintiff by the defendant of the Glenn lease and option and the execution and delivery of the administrator's deed to the plaintiff by reason of the assignment, and the agreement dated February 21, 1917, by which the plaintiff agreed to sell and the defendant agreed to buy the premises involved in this action, even on that theory the supplemental agreement, with all its imperfections and erroneous recitals, was sufficient to terminate the relation of mortgagor and mortgagee, including the equity of redemption and right of redemption. (*Banking Corporation of Montana* v. *Hein,* 52 Mont. 238, 156 Pac. 1085.)

Eliminating all the erroneous recitals in the supplemental agreement, sufficient remains to show that the evident purpose and intention of both the plaintiff and the defendant in executing the supplemental agreement was to terminate all claims of the defendant to the premises arising out of prior transactions, including defendant's equity of redemption and right of redemption under a foreclosure.

The defendant contends in his reply brief that "there has never been any foreclosure, and until there has been the equity of redemption continues; that Johnson's equity of redemption is still existent and his right of redemption will not commence until the date of foreclosure sale, and will continue for one year thereafter." That contention is not the law. (*Watson* v. *Edwards,* supra; *Bowen* v. *First State Bank,* supra.)

This court has held that the equity of redemption is a substantive property right which the mortgagor retains in the property and which may be sold or seized on attachment or execution. (*Banking Corporation* v. *Hein,* supra.) If the mortgagor sell or relinquish his equity of redemption to the mortgagee, or if taken on attachment or execution, nothing remains in the mortgagor on which he can base a claim to his statutory right of foreclosure, sale thereunder, and right of redemption therefrom, except, possibly, where the rights of junior encumbrancers may be involved, and that situation is not now under consideration.

The oft-quoted legal maxim "once a mortgage, always a mortgage" is undoubtedly to be read and considered with this limitation: "Once a mortgage, always a mortgage" until the parties to it agree to treat it differently and do so treat it, in which case it loses its character as a mortgage. (*Richmond* v. *Richmond,* 20 Fed. Cas. No. 11,801; *Haggerty* v. *Brower,* 105 Iowa, 395, 75 N. W. 321.)

Considering the transaction from its inception to its conclusion, it is apparent that the defendant intended to, and did, voluntarily relinquish his equity of redemption, his right of redemption, and his right to insist upon a statutory foreclosure and sale thereunder.

The defendant has had an opportunty to purchase the premises involved in this action at any time during the last ten years at the agreed price fixed in the agreement dated February 21, 1917, but has failed to pay the purchase price, or any part thereof, or the taxes due thereon or otherwise perform his part of that agreement, or perform any subsequent agreements entered into by him and the plaintiff. Scrutinizing the whole transaction upon any theory or from any viewpoint, it appears to be free from oppression, fraud, or deceit. The plaintiff has not taken any unconscionable or any undue advantage of the defendant.

The appellant complains bitterly in his reply brief of the [4] judgment because it directs the issuance of a writ of possession, or its equivalent, in an action to quiet title. "If a successful plaintiff was out of possession when the suit was brought, or if he be dispossessed during the pendency of the action, the court may award the incidental remedy of a writ of possession. The judgment need not, however, direct the issuance of the writ, as the necessary effect thereof is that the plaintiff is entitled to possession. A judgment for a plaintiff out of possession necessarily entitles him to possession, and he may have a writ of possession, whether or not the judgment so provides." (22 Cal. Jur., pp. 189, 194; Rev. Codes 1921, secs. 9081, 8711; *Landregan* v. *Peppin,* 94 Cal. 465, 29 Pac. 771; *Martin* v. *Bartmus,* 189 Cal. 87, 207 Pac. 550.

The trial court found all the issues in favor of the plaintiff. The evidence is conflicting. There is ample evidence to sustain the findings and judgment of the court.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied May 25, 1928.