Argued October 22; affirmed December 10, 1929; rehearing denied January 21, 1930

IN THE MATTER OF THE ESTATE OF HUGH W. WALLACE.

WILLIAM H. WALLACE, EXECUTOR, *v.* THOMAS B. KAY, STATE TREASURER

(282 Pac. 760)

598

For appellant there was a brief and oral argument by *Mr. George S. Shepherd.*

For respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Dean H. Dickinson.*

RAND, J. This is an appeal from a judgment determining the amount of the inheritance tax payable by the estate of H. W. Wallace, deceased. The question in controversy is whether 35 shares of the capital stock of H. W. Wallace company, a corporation, of the admitted value of $159,177.10, are subject to the payment of an inheritance tax. From a decree holding that said shares were so taxable, the executor has appealed.

The facts were stipulated in the trial court and, so far as deemed material for consideration here, they may be stated as follows: In October, 1909, H. W. Wallace, the decedent, was the owner of certain parcels or tracts of land in the city of Portland, in Tacoma, Washington, and elsewhere in the state of Oregon, and, for the purpose of forming a corporation to take over and hold the title to said lands, he organized the H. W. Wallace company and conveyed said lands to said company; that the amount of the capital stock of said

company was $4,800, divided into 48 shares of the par value of $100 each; that Wallace himself subscribed for 46 of said shares, the other two shares being subscribed for by two other persons who, together with Wallace, were elected as directors of said corporation; that the conveyances by Wallace to the corporation of said lands were made with the understanding and agreement between Wallace and the corporation that such conveyances should be received and accepted by the corporation as full payment of all of said stock subscriptions, and, with the further understanding and agreement, that Wallace should retain and enjoy a life estate in the conveyed property. The deeds contained no reservation of a life estate in Wallace, but it is agreed that, in conformity with such understanding, Wallace erected buildings upon the Portland properties which increased their value and the income realized therefrom; that Wallace received all of the income of the corporate property up to the time of his death, and paid all taxes and assessments thereon and retained the control of the management of the corporation as well as of the property. It is further agreed that on April 9, 1909, Wallace transferred, as a gift to five of his children, the 35 shares of stock in controversy here, giving to each of said children seven shares thereof; that one of said transferees predeceased Wallace and that said seven shares so transferred to her were included in the inventory of her estate and were subject to the payment of an inheritance tax by her estate; that Wallace died testate on February 10, 1926; that his will was probated and William H. Wallace, one of his sons and the appellant herein, was appointed as executor of the will; that the property left by decedent was inventoried and the inventory included the remaining 13 shares of the

capital stock of said company and other personal property but did not include the 35 shares in controversy. The property so inventoried was of the appraised value of $77,595.37, and, after deducting the indebtedness of decedent, expenses of administration and exemptions allowed by law, entitled the state to the payment of an inheritance tax of $996.53, which amount the executor has since paid. Upon objections filed by the state treasurer and a hearing thereon, the amount due the state was increased in the judgment appealed from by inventorying the 35 shares as the property of decedent to an additional amount payable to the state of $4,547.92, the amount in controversy here.

■ The statement of agreed facts is not as complete in respect to certain particulars as might be desired, but we assume that the recital that decedent transferred to the five children the 35 shares of stock as a gift carries with it all of the implications of a complete transfer and delivery of the certificates themselves and of the shares represented by them, and vested the legal title in the transferees, and that the transfer amounted to a valid gift *inter vivo*s. It did not, however, until the death of the transferor, have the effect of vesting in the transferees the full and absolute ownership of the stock such as ordinarily results from a transfer or valid gift of shares of stock, and this for two reasons. Ordinarily, corporations are the absolute owners of their corporate property. In the instant case the corporation owned the property but subject to a life estate in its grantor. With this life estate outstanding and during its existence, the corporation could receive no income from its property for the grantor alone was entitled to receive the income and in fact did receive it. Corporations are also ordi-

narily controlled by a board of directors elected by the stockholders. In the instant case the transferees of the 35 shares of stock, under their arrangement with their father, were to have no voice or vote in the election of directors or in the management of the affairs of the corporation. He was to have and did have sole control over the business of the corporation. Whether such arrangement was void as against public policy is beside the mark. The fact is the arrangement was made and it was lived up to during the lifetime of decedent. Now, the absolute ownership of stock carries with it the right to vote the stock at all stockholders' meetings and, to that extent, to have a say in the corporate management. It also carries with it the right to have the income of the corporate property applied to the conduct of the corporate business and, when dividends are declared, the right to receive a proportionate share of such dividends. Under the facts stipulated, none of these rights existed or were to exist in the transferees until after the death of decedent, and none of the transferees were to come into the possession or enjoyment of any of these rights during the lifetime of decedent and hence, while, as contended for by the executor, the transferees could have sold and transferred the stock during the lifetime of decedent, they could only have sold and transferred it subject to the conditions under which they were holding it.

Section 1191, O. L., in part provides:

"All property within the jurisdiction of the state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass or vest by dower, curtesy, will, or by statutes *or* (of) inheritance of this or any other state, or by deed, grant, bargain, sale or

gift, or as an advancement or division of his or her estate made in contemplation of the death of the grantor, or bargainor, or intended to take effect in possession or enjoyment after the death of the grantor, bargainor or donor to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, or by reason whereof any person or body politic or corporate, shall become beneficially entitled, in possession or expectation, to any property or income thereof, shall be and is subject to a tax at the rate hereinafter specified in section 1192, to be paid to the treasurer of the state for the use of the state; * * *.''

■ Under the stipulated facts, neither was the corporation to come into the possession or enjoyment of its property, nor were the transferees to come into the enjoyment of any of the rights of stockholders of the corporation until decedent's death. This limitation upon the corporation, which prevented it from coming into the possession and enjoyment of the corporate property, and the limitation upon the transferees, which deprived them of their rights as stockholders during the lifetime of decedent, we think bring the case fairly and justly within the terms and operation of the statute and subject the stock to a payment of an inheritance tax.

■■ As a general rule, where a transfer is made by the transferor, not in contemplation of his decease or with the purpose of evading the transfer or succession tax but with the intention to convey the property absolutely to the transferee, the transfer is not chargeable with the succession tax. But it is also the rule that where a transfer is made which is not to take effect in possession or enjoyment until the death of the grantor or transferor, it is chargeable with the succession tax: See note, 36 Am. Cas., p. 1089. Such clearly is the intention of our statute. The executor,

however, contends that because the statute was amended in 1919 by adding to the former law the clause "or intended to take effect in possession or enjoyment after the death of the grantor, bargainor or donor," and the transfers of the stock were made before the amendment of the statute, the statute as amended ought not to be applied in respect to the shares previously transferred. It is clear that the legislature intended by the amendment that all gifts or transfers made to take effect in possession or enjoyment after the donor's or transferor's death should be taxed at his death irrespective of whether the gift or transfer was made before or after the amendment took effect, for it provides that "all taxes imposed by this act shall take effect at and accrue upon the death of the decedent, or donor, * * *." In *Crocker v. Shaw,* 174 Mass. 266 (54 N. E. 549), the court, in construing an act similar to § 1191, O. L., said:

"We see no difference in principle between property passing by a deed intended to take effect in possession or enjoyment on the death of the grantor and property passing by will. In either case it is the privilege of disposing of property after the death of the grantor or testator and of succeeding to it which is taxed * * *.

"It is immaterial, it seems to us, in this case, as it would be in the case of a will, that the indentures were dated and executed before St. 1891, c. 425, took effect. It is the vesting of the property in possession and enjoyment on the death of the grantor and after the statute took effect, that renders it liable * * *."

■ The executor also contends that, if the judgment of the lower court is upheld, it will have the effect of subjecting real property in the state of Washington to the payment of an inheritance tax in Oregon.

The stipulation recites that of the property conveyed by Wallace to the corporation there was a lot in the city of Tacoma, which lot is, of course, beyond the jurisdiction and power of this state to tax for any purpose. There is no showing of the value of that property. It may be worth much or little, and, so far as the record shows, it may or may not have been considered in determining the value of the 35 shares at the death of decedent and it may not be now owned by the corporation. There is no stipulation in respect to this matter at all. The only evidence of the value of the shares of stock contained in the record is that contained in the report of the executor to the state treasurer and in that report he represented to the state treasurer that the value of each of the other 13 shares of stock was $4,547.92 per share. The trial court, upon finding that the 35 shares were taxable, adopted as the value of the shares the amount per share which the executor reported the other 13 shares to be worth and placed upon the 35 shares their admitted and undisputed value. Whether the Tacoma property was considered by the executor in placing the valuation upon the 13 shares, the record does not disclose. Hence, the question which the executor now seeks to raise is not before us for consideration.

■ The executor also contends that because the certificates of the 35 shares of stock are in the possession of the transferees and beyond his control, the judgment against him as executor for the amount of the tax cannot be sustained. The objection is foreclosed by the statute, which provides that:

"all heirs, legatees, and devisees, administrators, executors and trustees, and any such grantee under

a conveyance, and any such donee under a gift made during the grantor or donor's life, shall be respectively liable for any and all such taxes, with interest thereon, until the same shall have been paid  *  *  *'': § 1191, O. L.

The record shows that the executor now has in his custody and possession for the purposes of administration the properties and moneys of the estate and that the distributive share of each of the transferees now in the custody and possession of the executor is far in excess of their proportionate share of the amount payable to the state treasurer. Upon the payment of the amount due the state by the executor, the proportionate part of each transferee may be charged against his distributive share and no harm can result to the executor or to the estate, or any heir or devisee from the payment of the judgment by the executor out of the funds now in his possession.

■ But one other point need be noticed. As stated, one of the transferees predeceased the transferor. Until the death of the transferor, the shares of stock were not subject to the payment of an inheritance tax by any transferee who predeceased the transferor, because the enjoyment of the stock was postponed until the death of the transferor. Whether the estate of the deceased transferee paid to the state treasurer the tax on her seven shares the record does not disclose although the stipulation does state that these shares were subject to such tax. If a tax has been paid by the estate of said deceased transferee, then the amount paid must be deducted from the amount of the judgment appealed from. Under the particular conditions attached to the stock, which existed up to the time of the death of the transferor, the interest of the deceased transferee in the seven shares of stock

was not subject to the payment of an inheritance tax upon the death of a transferee before the decease of the transferor.

Under the facts stipulated, we are of the opinion that the shares were taxable. The judgment will, therefore, be affirmed, subject however to the right of the estate of the deceased transferee and of the executor in her behalf to have deducted the amount paid to the state treasurer by her estate upon the seven shares transferred to her, if any amount has been paid thereon, and it is so ordered.

AFFIRMED. REHEARING DENIED.

BROWN, J., absent.

ROSSMAN, J., dissenting. The facts of this case are free from dispute; they are succinctly set forth in a stipulation of the parties. Omitting the formal parts, and the recitals which state how this dispute arose, the stipulation sets forth:

"That the H. W. Wallace company was organized as an Oregon corporation on the 15th day of October, 1909, with its principal office in the city of Portland, Multnomah county, Oregon. The amount of capital stock was $4,800, divided into 48 shares of the par value of $100 each.

"The object of the corporation as stated in its articles was as follows: * * *

"On October 15, 1909, H. W. Wallace subscribed for 46 shares of the capital stock of said corporation, W. H. Wallace for one share * * *

"On October 6, 1909, it was agreed by the directors of said corporation that the following described real estate owned by H. W. Wallace be accepted in payment of the said subscriptions of the capital stock of said corporation: (here follows the description of four parcels of real property).

"And it was understood and agreed at the time that the grantor, H. W. Wallace, should retain and enjoy a life estate in the property and on or about October 27, 1909, said H. W. Wallace conveyed by good and sufficient deeds all of said real estate to said H. W. Wallace company, but said deeds did not contain a reservation of a life estate in said H. W. Wallace, but in conformity with his understanding with the directors said Hugh W. Wallace improved said real estate situated in Portland, Oregon, with buildings which increased the value thereof and likewise increased the income therefrom.

"That on or about the 9th day of April, 1909, said Hugh W. Wallace transferred to five of his children hereinafter named 35 shares of the capital stock in said H. W. Wallace company, as a gift to each of said children, to wit: To William H. Wallace seven shares, to George B. Wallace seven shares, to Catherine W. Rice seven shares, to Grace W. Griggs seven shares, and seven shares to Sarah W. Russell who died prior to the death of said Hugh W. Wallace and said seven shares were included in the inventory in the estate of Sarah W. Russell, deceased, and became subject to inheritance tax in said estate of Sarah W. Russell, deceased.

"That said Hugh W. Wallace retained the income from the real estate owned by the said H. W. Wallace company up to the time of his death, February 10, 1926, and paid the taxes and assessments against the property owned by said corporation, managed said real estate and the affairs of said corporation."

It will be observed from the foregoing that Wallace parted with the 35 shares of stock as a gift to his children and that when one of his children died her seven shares were included in the inventory of her estate; this last-mentioned detail was evidently included in the stipulation to emphasize the fact that Wallace had fully and finally parted with all dominion over and ownership in the 35 shares of stock. We

pause, also, to observe that while Wallace retained a life estate in the real property and the income from it, the stipulation contains no recital that the corporation was dependent exclusively upon this real estate for its income. The statement that Wallace "managed said real estate and the affairs of said corporation" is the nearest approach to such a statement, yet it falls far short from saying that the stock derived no benefit during Wallace's lifetime. The corporation was granted power by its articles of incorporation to deal in personal property, mortgages and leases and negotiate loans, as well as deal in real property. It is altogether possible under the foregoing stipulation that after the children received their 35 shares of stock the same may have greatly increased in value. It will be observed from the foregoing stipulation that the parties do not say that the children failed to vote their stock in the selection of the directors of the company, or failed to exercise any other privilege that stock ownership confers. It is true that the stipulation recites that Wallace "managed　＊　＊　＊ the affairs of the corporation" but that result may have come by virtue of the stockholder's wishes and votes.

Clarifying the situation still further is the following statement contained in the brief of the respondent: "Contemplation of death is not an issue in this case. Respondent does not contend that Hugh W. Wallace was in contemplation of death when he made the gifts of stock in question."

The sole question then before us is whether a share of stock in a corporation, which was paid for at the time of its subscription by a conveyance of real property in which the subscriber reserved a life estate, is "property　＊　＊　＊　intended to take effect in posses-

sion or enjoyment after the death of  *  *  *  donor,'' as defined in § 1191, O. L. That this question must be answered in the negative seems clear. The passing of title to the stock was not postponed until the death of Wallace. Each of his children, immediately upon receipt of his seven shares, could sell it, hypothecate it, or do with it any other act that possession and ownership of corporate stock confers. The mere fact that the stock would not earn any dividends until Wallace died, if that was a fact, does not establish that the gift was not ''to take effect in possession or enjoyment'' until after his death. Had he attempted to make a gift of these four pieces of real property to his children, subject to a life estate, respondent's argument might possess some merit; but such is not our case. To the contrary the real property was not given to the children, nor to any other person; it was conveyed to a corporation to discharge a debt which Wallace incurred when he subscribed for 46 shares of its capital stock. Five years later, when Wallace gave his children 35 shares of this stock, he did not thereby give them the real property; the law of corporations has repeatedly reiterated the fact that the owner of stock in a corporation is not the owner of real property held by it.

It may be well to state, although the stipulation of the parties makes the facts clear, that the gift of the stock operated in praesenti; it was an executed transaction, as distinguished from one that is executory; no further act was required of Wallace to vest in his donees the full and complete title to the stock; the transaction was not revocable, but absolute; and finally, when Wallace delivered to his children these 35 shares of stock, title passed out of him and into the donees.

To recapitulate, it will be observed that we are not concerned here with the real property, but with the shares of stock; it is the latter which the respondent proposes to tax. The mere fact that a portion of the assets of the corporation were encumbered with a life estate no more identifies the gift of this stock as one "intended to take effect in possession or enjoyment after the death of the grantor" than if they had been encumbered with a mortgage payable at the time of Wallace's death in an amount so large that it would have consumed all the earnings of the properties in the meantime. It is not charged that Wallace was actuated by fraud, bad faith, or a desire to avoid the demands of any law. We are justified in believing that proper motives prompted Wallace in this disposition of his property, and since no statute of this state exacts a tax from a parent who gives to his children some shares of capital stock none is required here. I, therefore, dissent from the opinion of the majority.