# In re POWELL'S ESTATE.

(No. 8,019.)

(Submitted January 23, 1940.   Decided March 1, 1940.)

[101 Pac. (2d) 54.]

214

*Mr. Ralph J. Anderson* for Appellant State Board of Equalization.

*Mr. Vard Smith,* for Respondent A. B. Powell, Administrator of the Estate of J. D. Powell, Deceased.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from an order determining inheritance tax, in the estate of J. D. Powell, deceased, by the State Board of Equalization.

The administrator of the estate in question made his final report to the court and to the State Board of Equalization, to which the board objected in writing. The objections were heard by the trial court on an agreed statement of facts. Thereafter the trial court overruled the objections and determined the inheritance tax in conformity with the final report. The pertinent part of the agreed statement of facts reads as follows:

"That J. D. Powell, the deceased, purchased from the Mutual Life Insurance Company of New York an annuity contract on December 6, 1935, and by the terms of the agreement between the insurance company and the deceased it was agreed that if at the time of death the discounted value of the policy exceeded the sum of Three Thousand Dollars ($3,000.00), the sum of One Thousand Dollars ($1,000.00) of such amount was to be paid

to Bessie Mildred Welch, and Two Thousand Dollars of such amount was to be payable to Helena Viola Harding, nieces of the deceased. That J. D. Powell died on August 18, 1938, and at the time of his death the discounted value of the policy was in excess of Three Thousand Dollars ($3,000.00). That neither of these nieces were heirs-at-law of the deceased, and neither of them is entitled to share otherwise in the estate remaining for distribution or any of the assets of the estate collected or received by the Administrator.

"That subsequent to the death of the deceased the insurance company paid the sums as agreed upon in the annuity contract unto the nieces direct, and paid the residue of the discount value, consisting of Eight Hundred Thirteen and 17/100 Dollars ($813.17), to the Administrator.

"That the said policy or contract was entered into without any physical or medical examination. That under the terms of said contract the said J. D. Powell was to receive specified payments at periodical intervals during his lifetime."

The board objected to the determination of the tax unless and until the payments made to the two nieces by the insurance company were included in the report of the administrator, the inheritance tax imposed thereon, and the administrator ordered to pay the tax on these payments.

The appellant board specifies as error the overruling of the objections made by it to the final report of the administrator and the court's failure to find a tax due on the payments made by the insurance company to the beneficiaries under the annuity contract, and its refusal to direct the administrator to pay the tax on the annuity payments in question. The appellant argues, first that the $3,000 paid to the nieces of the deceased were subject to inheritance tax, and cites several cases supporting its view; and, second, that the administrator is liable personally and as administrator of the Estate of J. D. Powell, deceased, for the amount of the tax, if any, due on the money passing under the annuity contract.

The court in its findings found that the administrator could not deduct from the distributive shares of the heirs-at-law of

the deceased the amount of the tax, if any, due on the money paid under the annuity contract, and that the administrator himself could not be personally liable for such tax, if any.

Assuming that the money paid to the nieces under the annuity contract is taxable, we do not believe the administrator personally or as administrator of the Powell estate, is liable for the tax. It must be borne in mind that the nieces were not heirs-at-law of the decedent, and that none of the property reaching the administrator's hands as administrator of the estate goes to them.

The section of the Code which applies is section 10400.5, Revised Codes, which provides: ''All taxes imposed by this Act shall be due and payable at the time of the death of the decedent, except as hereinafter provided; and every such tax shall be and remain a lien upon the property transferred until paid, and the person to whom the property is transferred and the administrators, executors, and trustees of every estate so transferred shall be personally liable for such tax until its payment. * * * No executor, administrator, or trustee shall be entitled to a final accounting of an estate, in settlement of which a tax is due under the provisions of this Act, unless he shall produce such receipt or a certified copy thereof or unless a bond shall have been filed as prescribed by section 10400.9.''

Under section 10400.7, the administrator is empowered to sell property of the estate to pay the tax ''in the same manner as he might be entitled by law to do for the payment of the debts of the testator or intestate.''

It seems clear that the legislature, in enacting the sections of the Code herein set out, had in mind facilitating the collection of inheritance tax. For that reason it provided that the administrators of estates should be liable for the tax as well as the recipients of the property. They are made liable for the reason that in the administration of estates they have in their possession and under their control the property which passes to the various beneficiaries. It is relatively simple for the administrator, in the course of administration of the estate, to ascertain the amount of the tax due under the statute, to secure its adju-

dication, and to provide funds for its payment. It is much easier for the administrator to do this than it is for the tax-collecting agency to pursue each bequest to the individual beneficiary and to collect it from him. The reasons underlying the sections quoted do not obtain here.

From the agreed statement of facts in the record, it is conceded that the administrator did not at any time have in his possession the $3,000 transferred by the annuity contract, nor any other property belonging to the beneficiaries of that contract; and further, it does not appear that he had, as administrator, any right to take into his possession the money in question, nor that he could enforce payment of the tax out of the money in question. It seems to us that a reading of the statute indicates that the legislature did not contemplate personal liability on the part of the administrator in a situation like this, for it provides that the administrator shall have power to sell sufficient property to pay the tax ''in the same manner as he might  *  *  *  do for the payment of  *  *  *  debts.'' The section indicates the legislative intent clearly to hold the administrator liable only for the tax on property passing, or which should pass, through his hands as administrator, or at most property impressed with a tax lien which the administrator might seize and sell in the same manner as he might be entitled by law to do for the payment of debts.

In support of the argument that the administrator must pay the tax on the money in question, appellant cites subdivision 3 (c) of section 10400.3: ''Administrators, executors, trustees and grantees under a conveyance, made during the grantor's life and taxable hereunder, shall be liable for such taxes with interest, until the same have been paid.''

In the case of grants of real property made during the grantor's life and subject to the tax, the tax lien is impressed upon the property, and even though the grantee may dispose of it, yet the property may be sold to pay the tax due and the administrator is empowered to sell the property under the provisions of section 10400.7, and the situation under subdivision 3 (c), section 10400.3, is entirely different from the situation in

the instant case, since here the administrator is not in position to enforce payment of the tax out of the money in question.

An inheritance tax is not a tax upon the property of the decedent, but upon the privilege of acquiring property by inheritance. (*State ex rel. Davis* v. *State Board of Equalization,* 104 Mont. 52, 64 Pac. (2d) 1057, 108 A. L. R. 1397.) If it were a tax upon the property which passes upon the death of the decedent, then the administrator would have property with which to pay the tax; but since the tax is not upon the property but upon the right to take, the tax must be collectible from the share of the one who secures the particular property on which the tax is computed.

If the administrator had in his possession other property passing to the beneficiary, or if there were property of the decedent passing to the beneficiaries of the annuity which he should have reduced to possession, or if, as in a case where real property, or personal property other than money, was to pass to the beneficiaries of the annuity contract within three years of the death of decedent, which come within the provisions of subsection 3 (c) of section 10400.3, supra, then the administrator would be liable under the statute. Thus in the case of *In re Wallace's Estate,* 131 Or. 597, 282 Pac. 760, 762, the administrator was held liable for the tax on certain shares of stock passing to heirs of the decedent. The shares in question were never in his possession, nor apparently did he have a right to their possession; but he did have in his possession other shares belonging to these heirs, and the court said: "The record shows that the executor now has in his custody and possession, for the purposes of administration, the properties and moneys of the estate, and that the distributive share of each of the transferees now in the custody and possession of the executor is far in excess of their proportionate share of the amount payable to the state treasurer. Upon the payment of the amount due the state by the executor, the proportionate part of each transferee may be charged against his distributive share, and no harm can result to the executor or to the estate, or any heir or devisee,

from the payment of the judgment by the executor out of the funds now in his possession.''

The provisions of section 10400.7, giving to the administrator power to sell property of the estate to pay the tax, indicate very strongly that the legislature contemplated that the administrator should be liable only in those cases where it was reasonably possible for him, as an incident of his duties in his official capacity, to enforce the payment of the tax from the beneficiaries upon whose right to succeed to the property the tax is based.

But it is urged by appellant that under the provisions of section 10400.5, and under other subdivisions of section 10400, the inheritance tax on the $3,000 in question would be a lien upon the property in the estate even though the recipients of the $3,000 have no interest as heirs or beneficiaries in the corpus of the estate. As we have indicated above, an inheritance tax is not a tax upon the property of the decedent, but on the privilege of the individual beneficiary or heir to receive property by inheritance. (*State ex rel. Davis* v. *State Board of Equalization,* supra.) Under statutes similar to ours, the universal holding has been that each specific share, interest or legacy passing upon the death of a decedent must bear its proportionate part of the inheritance tax, and that the share of one beneficiary cannot be used to pay the tax charged against that of another. (61 C. J. 1686 and 1687; *Eddy* v. *Short,* 190 Iowa, 1376, 179 N. W. 818; *Smith* v. *Browning,* 225 N. Y. 358, 122 N. E. 217.)

In 61 C. J. 1733, the author states the rule thus: ''Generally speaking, the lien of a transfer tax attaches only to the fund to be distributed, or to the particular property when passing by specific bequest or devise, and does not attach upon specific property coming into the hands of the executor or administrator for general administration, nor is a particular legacy, tax upon which has been paid, subject to a lien for other and unpaid portions of the transfer tax.''

The New York statute is almost exactly the same as ours. As was said in the case of *Estate of Oppenheimer,* 75 Mont. 186,

243 Pac. 589, our statute was taken from the New York statute. In construing their statute the New York court has followed the rule as stated in Corpus Juris. (*In re Howell's Estate,* 34 Misc. 432, 69 N. Y. Supp. 1016; *In re Westurn's Estate,* 152 N. Y. 93, 46 N. E. 315; *Smith* v. *Browning,* supra.)

This court, in the case of *In re Fratt's Estate,* 60 Mont. 526, 199 Pac. 711, 715, has stated the rule applicable in Montana. In that case the court was construing Chapter XIII of the Revised Codes of Montana of 1907. The court there held that where property was given to one for life, the remainder to go to her lineal descendants after the death of testatrix, the beneficiary of the life estate should only be required to pay a tax based on the value of that life estate. After holding that the transfer of the remainder could not occur until the death of the life tenant, the court said this: "Marguerite Morrissey must pay for the privilege of inheriting, but she cannot be called upon to pay more than that which is measured by the value of her inheritance." In the opinion in that case the court quotes with approval this language from *In re Howell's Estate,* supra: "To compel one person to pay from his estate a tax, or even a small portion of a tax, properly chargeable against the estate of another, is to do a thing not justifiable upon principle and not required by the statute." [34 Misc. 432, 69 N. Y. Supp. 1018.] Chapter XIII construed in the *Fratt Case,* supra, was the predecessor of the present statute here under consideration, and on all matters herein material is the same as the present statute.

The language of section 10400.7 is extremely broad when it provides that the personal representative shall have full power to sell "so much of the property of the decedent as will enable him to pay such tax." Taken alone, the first sentence in this section seems to support the contentions of the plaintiff. However, when all of the section is read it would seem to show without much question the legislative intent to limit the liability of the administrator to those situations where he has in his hands property going to the individual legatees or beneficiaries out of which the tax may be paid, and that certainly it does

not extend to any case where it is impossible for the representative to gain possession of any property passing to the particular legatee sufficient to pay the tax.

No extended comment on the language found after the first sentence in the section should be necessary, and a mere setting out of the language should be sufficient: ''Any such administrator, executor, or trustee, *having in charge* or in trust any legacy or property for distribution, subject to such tax, shall deduct the *tax therefrom;* and within thirty days therefrom shall pay over the same to the county treasurer, as herein provided. If such *legacy or property* be not in money, *he shall collect the tax thereon* upon the *appraised value thereof,* from the person entitled *thereto.* He shall *not deliver or be compelled to deliver* any *specific legacy* or property subject to tax under this law, to any person until he shall have collected the tax thereon. [The converse of this it would seem would require that when the tax had been paid upon a specific legacy, the administrator could be compelled to turn that particular legacy over to the legatee.] If any *such legacy* shall be charged upon or payable out of real property, the *heir or devisee* shall deduct such tax *therefrom* and pay it to the administrator, executor, or trustee, and the tax shall remain a lien or charge on such real property until paid, and the *payment thereof shall be enforced by the executor, administrator, or trustee in the same manner that payment of the legacy might be enforced, or by the attorney-general under section 10400.30 of this Act.* If any such legacy shall be given in money to any such person for a limited period, the administrator, executor or trustee shall retain the tax upon the whole amount, but if it be not in money, he shall make application to the court having jurisdiction of an accounting by him to make an apportionment if the case require it, of the sum to be paid into the hands of such legatees, and for such further order relative thereto as the case may require.''

This language indicates two things: First, as this court has often held, that the tax is not upon the corpus of the estate as such, but is on the right of the individual to inherit and is

measured by the amount of his legacy. And, second, by the several references to the power of the administrator to deduct the tax from the specific legacy, and particularly the language in the first sentence of the quoted portion of the section, ''any such administrator * * * having in charge * * * property * * * subject to such tax,'' seems to state as specifically as the legislature may, the intent of the legislature as we have held that intent to be in this opinion.

The meaning of the above cited decisions is that the statutes impose a tax on the inheritors' right to inherit and 'not on the property of the decedent or on the decedent's right to transmit. They further provide that the gross estate be not taxed. The rate of tax varies according to the relationship of the beneficiary, as to the amounts of the exemptions. Section 10400.5 provides among other things that ''every such tax shall be and remain a lien upon the property transferred until paid, and the *person* (italics ours) to whom the property is transferred'' and the personal representative shall be liable for the tax. This language refers to the individual receiving the particular property, and says that the individual is liable for the tax. This section does not specify that every beneficiary is liable for the tax owing by every other beneficiary, but by putting the term in the singular it clearly implies the single liability of the particular beneficiary, and, as above stated, this court in the cases cited has so held. Section 10400.9 supplies further reason for the interpretation we have given the statute, when it provides ''any beneficiary'' of property chargeable with the tax may give bond for the deferred payment of the tax until such time as the beneficiary may come into actual possession or enjoyment of the property.

This is not inconsistent with what is said in the case of *State ex rel. Davis* v. *State Board of Equalization,* supra [104 Mont. 52, 64 Pac. (2d) 1058, 108 A. L. R. 1397]. In that case this court said the personal representatives were liable for the tax and ''they are authorized to sell the property of the estate for the purpose of obtaining money to pay the tax in the same manner as they may to pay the debts of the deceased.'' The

court was considering a situation where there was property in the possession of the administrators passing to the individuals whose right to succeed was being taxed; but it does not hold that property going to an heir may be sold to pay the tax on property passing to another where by no reasonable means the second heir could be required to reimburse the first, as here. The language of the opinion to the effect that the representative may sell property to pay the tax points to a requirement that the representative has power to sell property going to the beneficiary, through its possession or otherwise, before he is personally liable for the tax.

Under statutes the same as ours, the New York court has held that the executor is not absolutely liable for the tax where, without fault or delinquency on his part, the estate shrank so that no money came into his hands with which to pay the tax. (*In re Meyer*, 209 N. Y. 386, 103 N. E. 713, Ann. Cas. 1915A, 263, L. R. A. 1915C, 615.)

The New Jersey court, in construing statutes similar to ours, in the case of *Martin* v. *Bird*, 126 N. J. Eq. 206, 8 Atl. (2d) 333, 335, says: "Unquestionably it was not the intent of the legislature that executors and administrators should be personally liable for the payment of the tax if they had no means or power of accomplishing the payment of such tax out of the assets of the decedent,—and the statute should be so construed. But the legislative language is direct, unambiguous and specifies no exception; and it is therefore impossible to conclude that it was intended that the executors or administrators should be absolved from liability, simply because no assets of the decedent sufficient to pay the tax actually came to their hands,— inasmuch as section 8 of the statute gives them 'full power to sell so much of the property of the decedent as will enable them to pay said tax.' (P. L. 1909, p. 330, N. J. S. A. 54:35–7.) If there was real estate of the decedent which might have been sold by the executors and thereby sufficient funds obtained by them to have paid the tax,—and concededly such was the fact in the instant case,—they cannot escape the liability imposed by the statute, merely because they did not take such proceed-

ings to sell and hence, by reason of their own default and neglect, they did not in fact have sufficient assets of the decedent come into their hands to enable them to pay the tax.''

Appellant relies on the case of *Ritcher* v. *Commonwealth,* 180 Ky. 4, 201 S. W. 456, 459. In that case, and under the laws of Kentucky, certain property passed directly by will, and did not come into the possession of the administrator. Under a statute similar to ours that court held the administrator personally liable for the tax on the property passing by the will. The holding in that case is not inconsistent with what we have said, as is easily discovered upon an examination of the language of the court. After reciting the provisions of the Kentucky Code similar to our section 10400.7, empowering the administrator to sell property to pay the tax, the court said: ''And if the property, real or personal, does not come into his possession or control, as for example in this case, where it passed directly by the will of the testator to the devisee, he is given power to sell so much of the property so passing as will enable him to pay the tax. It will thus be seen that the statute imposes no burden or hardship on the fiduciary.'' The result in that case is based, then, on the assumption that there was property impressed with a tax lien passing to the particular beneficiaries which could have been reached and sold by the administrator to pay the tax—a situation entirely different from that obtaining in this case.

It is our conclusion that under the facts in this case the administrator is not liable personally, or in his official capacity for the tax, if any, on the money passing to the beneficiaries of the annuity contract.

Affirmed.

Mr. Chief Justice Johnson and Associate Justices Angstman, Morris and Arnold concur.

Rehearing denied April 16, 1940.