In re Estate of Shafer; Evatt, Tax Commr.,
Appellant, *v.* Shafer, Exr., Appellee.

(No. 870—Decided November 10, 1943.)

*Mr. Thomas J. Herbert*, attorney general, and *Mr. Aubrey A. Wendt*, for appellant.
*Mr. George C. Cummins*, for appellee.

MATTHEWS, J. This appeal presents the question of whether an executor is under a personal liability to pay an inheritance or succession tax as fixed by the finding of the Probate Court when that finding was based upon a mistake as to the extent of the indebtedness resulting from an error in that respect in the executor's petition to fix inheritance tax and his innocent but mistaken representation as to the extent of the debts at the hearing on the petition.

The testatrix died on September 13, 1930. Her will was admitted to probate and letters issued to William C. Shafer on October 29, 1930. On November 17, 1931, he filed the application for determination of inheritance tax in which he listed assets of the estimated value of $82,128.94 and liabilities of $60,336.84, leaving a net value of the estate of $21,792.10, which was sufficient to pay the specific legacies in full. All parties interested, including the Tax Commission, were notified and at the hearing the court, in accordance with the allegations of the petition, determined ''the amount of tax to which each succession is liable, the date of accrual of tax, the person by whom such tax should be paid, and the township or municipality in which such tax originates'' and this was followed by a schedule of the names of the successors, relationship, value of succession, exemption, balance subject to tax, amount of tax, date of accrual, person by whom tax should be paid and the

township or municipality of testatrix's residence at time of death. The court recited in this schedule that the successor should pay the tax on his or her succession. At no place did the court find or determine that William C. Shafer, either as executor or personally, should be charged with the payment of these taxes.

These taxes were not paid and nothing was done about the matter until November 13, 1942, when the executor filed an application to modify the findings made on November 17, 1931. Due notice was given.

The hearing on the application to modify the determination of the tax disclosed these facts:

William C. Shafer was engaged in two or more distinct businesses, and in order to keep separate and distinct records, he adopted a different trade name for each business. He and the testatrix, who was his wife, owned two or three tracts of real estate, as tenants in common, the testatrix owning two-thirds and William C. Shafer the other one-third, and while the record is not very clear, it seems that in order to finance his business ventures they borrowed money from various banks on their joint and several promissory notes secured by mortgages on this real estate. The exact amount of this joint and several indebtedness was $37,762, as stated in the opinion of the trial judge.

William C. Shafer testified that in reporting debts for the purpose of determining the inheritance, he listed only half of this amount as the testatrix's debt.

The finding as to the amount of the inheritance tax was predicated on this mistake.

It is agreed that after the testatrix's death and before the petition for the determination of the inheritance tax, this real estate had been sold and the proceeds used in payment of the mortgages.

It is stipulated that in October, 1931, William C. Shafer was insolvent, but the extent of his insolvency was not disclosed.

It is a fair inference from the testimony that as between the testatrix and William C. Shafer, he was primarily liable and to the extent that the proceeds of her property were used to pay these mortgages, her estate was and is entitled to reimbursement from him.

The Probate Court on this evidence found that the executor was entitled to a modification and redetermination of the tax and then proceeding to a redetermination "adjudged and decreed that estate has no value and no one succeeds thereto and that no tax should be levied thereon, and that the order of determination of inheritance tax heretofore made is modified to the extent that any successions thereon are exempt from the payment of any inheritance tax, and that said estate is nontaxable."

It is from that order that this appeal was taken.

The first contention is that the Probate Court had no jurisdiction to make this redetermination. It is urged that Section 5339, General Code, is the only statute that could have any possible relation to a redetermination of inheritance taxes and that it is inapplicable here because it only applies when debts are proven after the determination, and in this case this debt was known to the executor at the time. It does not appear, however, that the executor was conscious that it was a debt. It is true that he knew the circumstances, but he did not know their legal implications. Furthermore, it does not appear that this debt was ever proven either before or after the determination of the tax. What happened was that the executor sometime after the determination of the tax was advised or at least learned that joint and several obligors are each and all liable for the entire debt. The general rule is that ignorance of the law does not affect the rights of parties.

However, we do not think it necessary to predicate our conclusion that the Probate Court had jurisdiction

solely upon Section 5339, General Code. Under other provisions of the Probate Code, the Probate Court is given broad powers to declare rights and instruct fiduciaries. By Section 10501-53, General Code, it is given jurisdiction "to direct and control the conduct" of executors—"to render declaratory judgments"—"to direct and control the conduct of fiduciaries"—and it "shall have plenary power at law and in equity fully to dispose of any matter properly before the court."

In view of this broad grant of power we are of the opinion that the court had jurisdiction and the fact that the executor conceived that he was proceeding under a particular grant of power did not narrow its jurisdiction.

Assuming jurisdiction, it is next contended that it was an erroneous exercise of that jurisdiction. It is urged that the determination of the tax partakes of the nature of a judgment and that the court could not rightfully disturb it after the lapse of more than eleven years.

It is true that by Section 10501-17, General Code, the Probate Court is placed on the same basis as the Common Pleas Court so far as power to vacate or modify its orders or judgments is concerned, and by Section 10501-18, General Code, it is provided that "for the purpose of vacating or modifying its orders or judgments," the year is divided into "three terms of four months each."

As no ground is asserted which would justify a Common Pleas Court in modifying a judgment or order made by it after the expiration of more than thirty terms of court, we are confident that this subsequent order of the Probate Court can have no effect on the original determination and that it must still be regarded as in full force and effect according to the meaning under the law, of the language employed.

Now what did the court say in this order and what was its purpose?

It is apparent on a reading of the determination of the court that it contains no order or decree directing the executor to pay. Indeed it orders no one to pay. All it does is to determine "the amount of tax to which each succession is liable, the date of accrual of tax, the person by whom such tax should be paid." That is far even from the rendition of a judgment against the beneficiaries for the amount of the tax.

It is our opinion that this determination has none of the attributes of, and was never intended to be, a personal judgment against anyone. We, therefore, hold that the rights and liabilities of the parties—executor and beneficiaries—under the statutes and the law have not been merged in any judicial determination and that we must look to the statutes and applicable law to determine them. We shall proceed to do so.

Sections 5336 and 5337, General Code, disclose the intent of the General Assembly as to the nature of the tax burden and the duty of the executor, administrator, or trustee. By Section 5336, General Code, it is provided that:

"Taxes levied under this subdivision of this chapter shall be due and payable at the time of the succession, except as herein otherwise provided, but in no case prior to the death of the decedent. Taxes upon the succession to any estate or property, or interest therein limited, dependent or determinable upon the happening of any contingency or future event, and not vested at the death of the decedent, by reason of which the actual market value thereof cannot be ascertained at the time of such death, as provided in this subdivision of this chapter, shall accrue and become due and payable when the persons or corporations then beneficially entitled thereto shall come into actual possession or enjoyment thereof. Such taxes shall be and

remain a lien upon the property passing until paid, and the successor and the executors or administrators of the general estate of the decedent, and the trustees of such property shall be personally liable for all such taxes, with interest as hereinafter provided, until they shall have been paid as hereinafter directed. Such an administrator, executor or trustee, having in charge or in trust for distribution any property the succession to which is subject to such taxes, shall deduct the taxes therefrom, or collect the same from the person entitled thereto. He shall not deliver, or be compelled to deliver, any specific legacy or property, the succession to which is subject to said taxes, to any person, until he shall have collected the taxes thereon. He may sell so much of the estate of the decedent as will enable him to pay said taxes in like manner as he would be empowered to do for the payment of the debts of the decedent.''

And by Section 5337, General Code, it is enacted that:

''If a legacy subject to such taxes is charged upon or payable out of real estate, the heir or devisee, before paying it, shall deduct the taxes therefrom and pay such taxes to the executor, administrator or trustee, and the taxes shall remain a charge upon the real estate until it is paid; and the payment thereof shall be enforced by the executor, administrator or trustee, in like manner as the payment of the legacy itself may be enforced, or by the prosecuting attorney as provided in this subdivision of this chapter. If such legacy shall be given in money to a person for a limited period, such administrator, executor or trustee shall retain the tax on the whole amount; and if it be not in money he shall make an application to the court having jurisdiction of his accounts to make an ascertainment, if the case require it, of the sum to be paid into his

hands by such legatee on account of the taxes, and for such further order as the case may require."

Sections that follow Section 5337, General Code, confer upon the Probate Court jurisdiction to determine questions arising in relation to the tax and specifically by Section 5341, General Code, power to direct the county auditor "to fix the actual market value of any property the succession to which is subject to the tax" and report his finding to the court.

In *Wellman* v. *Cleveland Trust Co.*, 107 Ohio St., 267, 140 N. E., 104, the court had before it the application of those sections (5342 *et seq.*) relating to the tax on future, contingent, and conditional estates, and took occasion to comment on the meaning of the statute as a whole, saying at pages 275 and 276, that:

"These various provisions would warrant the construction that both the primary and ultimate liability to pay the taxes'was upon the respective beneficiaries, and that the liability imposed upon the administrator, executor, or trustee was imposed for the purpose of insuring his performance of his duty in the collection of the tax from the various beneficiaries, and could the act be made to work in such way as to secure payment of the taxes by the beneficiary forthwith out of the property passing, we would hold to such effect."

In that case the question related to the tax upon a bequest in trust to pay the income to various beneficiaries in succession and presented the problem of determining whether the tax should be paid out of the corpus or in some way computed and amortized out of the successive interests. The court held that it was payable out of the corpus of the bequest without any right of replenishment from the income. The status of the estate did not require, nor was there any attempt to charge the executor personally with the payment of the tax and what the court said on that subject was in *arguendo,* but must be given weight as

must also the fact that the court said that our inheritance tax law was probably modeled after the New York Act and relied largely on New York cases construing the law of that state. We think we should therefore regard New York cases as having especial significance on the question before us.

In *In re Application of Meyer, Exr.*, 209 N. Y., 386, 103 N. E., 713, the New York Court of Appeals held, as stated in the syllabus as reported in L. R. A., 1915C, 615:

"1. A transfer tax cannot be set aside on the sole ground that the appraisement of the estate was inaccurate, and that there was in fact no transferable property.

"2. If, after appraisement of a transfer tax, the estate, without fault or delinquence on the part of the executor, shrinks, so that no money comes into his hands with which to pay the tax, he is not required to pay it out of his own funds, although the statute provides that he shall not be entitled to a final accounting of the estate unless he shall produce a receipt for the tax, and that he shall be personally liable for the tax until its payment."

An examination of that case discloses that the court had under consideration a statute identical in language to our statute.

Montana has a similar statute. In *Re Estate of Powell,* 110 Mont., 213, 101 P. (2d), 54, the court held, as set forth in the syllabus as reported in 128 A. L. R., 116:

"An executor or administrator is not liable, either personally or in his representative capacity, for an inheritance tax in respect of property which he has never possessed or been in a position to reduce to possession, passing to persons having no other interest in the estate out of which the tax might be paid, as in the case of payments made under an annuity contract with the

decedent directly to persons designated by him, who have no other interest in the decedent's estate, where, though the inheritance tax statute declares that the executor or administrator of a decedent's estate, as well as the recipients of the decedent's property, shall be personally liable for the tax until its payment, and shall not be entitled to a final accounting unless he shall produce a receipt or file a bond for the payment of the tax, and empowers an executor or administrator to sell property of the estate to pay the tax in the same manner as he might sell for the payment of the decedent's debts, the tax is not one upon the property of the decedent, but upon the privilege of acquiring property by will or inheritance, and the individual beneficiary is personally liable therefor, and the context indicates that the tax is payable by an executor or administrator only out of property passing to the person taxed.''

In 28 American Jurisprudence, 140, it is stated that:

''A personal representative is personally liable for the inheritance tax if he distributes the estate without paying the tax when there were funds available for that purpose, although he would not be liable where, after appraisement, an estate shrinks without his fault so that no funds come to his hands available for the payment of the tax, as where, pending administration, all of the property which could have been the subject of transfer is lost to the estate by a mortgage foreclosure.''

So we hold on these authorities that an executor or administrator is not personally liable to pay an inheritance tax notwithstanding the Probate Court has fixed the amount to be paid on succession, where, through no fault of his, there are no funds in the estate subject to the tax in his possession or control with which to pay, but that a personal liability does attach, where the estate is depleted through his fault and for that reason no funds of the estate, subject to the tax,

are in his possession or under his control, with which to pay.

To what conclusion does that bring us in this case?

The record is obscure in many respects, but it certainly does not affirmatively appear that the shrinkage of this estate was through no fault of the executor. It does not even appear that the shrinkage has proceeded to the point that there are no assets.

If the money realized from the sale of the testatrix's interest in this real estate was used to pay the debts for which William C. Shafer was primarily liable (and so it appears) he became personally liable to the estate for the amount so used. In fact it became assets in his hands as executor for which the surety upon any bond given by him for the faithful performance of his duties would be liable to respond. It is true that no bond was required in this case, but mention of the principle makes clear the dereliction of duty.

The stipulation that William C. Shafer was insolvent in 1931 does not prove that the claim against him was worthless. Any excess of debts over assets would satisfy the definition of insolvency, even though he might have assets sufficient to pay creditors ninety per cent or more.

Furthermore, this issue of no assets was raised after the lapse of eleven years and ten years after the court ordered the giving of a bond, and after four accounts had been filed, and where it had to be met if a discharge was to be obtained.

We find that the record falls far short of showing facts exculpating the executor for the absence of assets subject to this tax. As the order of the Probate Court could be sustained only on such a showing, the order is reversed and the cause remanded for further proceedings according to law.

*Order reversed.*

Ross, P. J., and HILDEBRANT, J., concur.