In re HUME'S ESTATE.
FURNESS, Appellant, v. LAUGHLIN, Respondent.
No. 9364.
Submitted May 27, 1954. Decided July 13, 1954.
272 Pac. (2d) 999.

224

Mr. Daniel G. Kelly and Mr. P. F. Leonard, Miles City, Mr. Ralph J. Anderson, Helena, for appellant, Thomas Furness.

Mr. Hugh J. Lemire, Miles City, for objector, Walton C. Baker, et al.

Messrs. Leavitt and Lucas, Mr. W. B. Leavitt, Miles City, for respondent and executor.

Mr. Anderson and Mr. Leavitt argued orally.

MR. JUSTICE FREEBOURN:

Two appeals have been here consolidated. They arise from two orders made by the Honorable S. D. McKinnon, district judge, in the estate of John B. L. Hume, deceased.

John B. L. Hume, a single man, died on March 21, 1952, in Miles City, Custer County, Montana, leaving an estate valued at approximately $446,959.92, which he disposed of by will.

The will, in part, provided: "Fourth: I give * * * to Thomas Furness the sum of $10,000.00 net and clear of any charge whatsoever, it being my direction that any inheritance tax that may be chargeable on this bequest shall be paid by my executor as an administrative expense of the estate.

"Fifth: I give * * * to my old friend, John C. Laughlin and to his wife, Elizabeth Laughlin, * * * the sum of $10,000.00 each * * * both of these bequests shall be net and clear of any charge, it being my direction that any inheritance tax that may be chargeable to either or both of these bequests shall be paid by my executor as an administrative expense of the estate."

Of some thirty-seven specific gifts and bequests, the only ones in which the testator specifically declared that any inheritance tax that may be chargeable thereon "shall be paid by my executor as an administrative expense of the estate," are the three as set out above, whereby Thomas Furness, John C. Laughlin and Elizabeth Laughlin were each given $10,000.

The will also provided: "Thirty-fourth: That after the payment of expenses of administration, inheritance taxes and all other legal charges against my estate if there is not sufficient money and property remaining with which to pay all of the bequests and legacies herein provided for, then such bequests and legacies shall be paid in full in the order that they are set forth in this Will commencing with that [the first] contained in paragraph Third hereof and continuing in the order given until all my property is exhausted, it being my will and direction that there shall be no apportionment between the devisees."

The intention of a testator is to be carried out as far as possible. R. C. M. 1947, sec. 91-201. See In re McLure's Estate, 63 Mont. 536, 208 Pac. 900; In re Murphy's Estate, 99 Mont. 114, 43 Pac. (2d) 233; In re Hauge's Estate, 92 Mont. 36, 9 Pac. (2d) 1065; In re Spriggs' Estate, 70 Mont. 272, 225 Pac. 617.

Such intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of the testator's oral declarations. R. C. M. 1947, sec. 91-202. In determining the intention of the testator the words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained. R. C. M. 1947, sec. 91-208. See In re Estate of Hash, 64 Mont. 118, 208 Pac. 605. "All the parts of a will are to be construed in relation to each other * * *." R. C. M. 1947, sec. 91-205.

Apparently the decedent had knowledge that an inheritance tax is collectible from the share of the person who receives the property on which the tax is computed, and, not wanting the Furness and Laughlin gifts to be lessened by the deduction of the amount of such tax thereon, specifically provided in such bequests that the inheritance tax on such gifts "shall be paid by my executor as an administrative expense of the estate." In no other bequest did he use such words or their equivalent.

"All taxes imposed by this act [inheritance tax] shall be due and payable at the time of the death of the decedent, * * * and the person to whom the property is transferred and the * * * executors * * * shall be liable for such tax until its payment", R. C. M. 1947, sec. 91-4415, and the executor "shall not deliver or be compelled to deliver any specific legacy on property subject to tax under this law, to any person until he shall have collected the tax thereon. * * *" R. C. M. 1947, sec. 91-4417. "Under statutes similar to ours, the universal holding has been that each specific share, interest or legacy passing upon the death of a decedent must bear its proportionate part of the inheritance tax * * *." In re Powell's Estate, 110 Mont. 213, 101 Pac. (2d) 54, 57, 128 A. L. R. 116.

It is the contention of the appealing devisees, in one appeal, ▆▆ that the wording of paragraph "Thirty-fourth" of the will entitled them to take their bequests as though the testator had directed "that any inheritance tax that may be chargeable on this bequest shall be paid by my executor as an administrative expense of the estate."

With this contention the district court did not agree, nor do we.

If the decedent had intended that his estate should pay the inheritance taxes due on the respective shares of the appealing devisees, he could have so directed, in clear, certain and concise terms, as he did when he declared the inheritance taxes on the ten thousand dollar bequests to Furness and the Laughlins should be paid out of his estate. The fact he did not so declare convinces us he had no such intention.

To hold that paragraph "Thirty-fourth" of the will, hereinbefore set forth, shows that the testator intended that inheritance taxes due on the bequests of devisees, other than Furness and the Laughlins, should be paid by the estate, requires words be read into such paragraph which the testator did not, and did not intend to, place in such paragraph.

Such paragraph is clear and needs no interpretation, and when considered together with paragraphs "Fourth" and "Fifth," also hereinbefore set forth, cannot be held to show the intention of the testator was that the estate should pay the inheritance taxes due on the bequests of the appealing devisees or on any other bequest than the designated ten thousand dollar bequests of Furness and the Laughlins.

The question raised by the second appeal arises out of paragraph three of the will which, in part, provides: "I give and bequeath to Thomas Furness * * * all my real property * * * said bequest to and it does hereby include my entire ranch holdings, both real and personal, as the same exists at the time of my death * * *."

Hume, prior to his death, executed two mineral deeds: One to Weldon J. Birdwell and Hugh Boren, and the other to Eldridge L. Rayburn, whereby he, "in consideration of the sum of

ten and more dollars * * * and other good and valuable considerations * * * does hereby grant, bargain, sell, convey, transfer, assign and deliver unto [the] grantee (whether one or more) an undivided * * * interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands * * * and grantor does hereby warrant said title * * * and does hereby agree to defend'' the same.

These mineral deeds covered lands bequeathed to Furness under paragraph three of the will, and were filed and recorded in the office of the county clerk and recorder on March 7, 1952. The balance of the money due Hume on such mineral deeds was paid after his death, which occurred on March 21, 1952, the money due on one deed, $7,159.95, being paid on March 22, 1952, and the money due on the other deed, $10,492.49, being paid on March 24, 1952. These two amounts were paid to Hume's bank by draft, a photostatic copy of one introduced in evidence showing ''* * * March 4th, 1952, 30 days after sight, subject to approval of title pay to the order of J. B. L. Hume seven thousand one hundred fifty-nine and 95/100 dollars * * * [signature] Eldridge L. Rayburn.''

The executor credited these two amounts of money to the estate, and his report showing the same was approved by the district judge over Furness's objection. Furness contends that he is entitled to such moneys as part of the bequest given him under paragraph three of the will.

Paragraph three specifically declares, ''said bequest to and it does hereby include my entire ranch holdings, both real and personal, *as the same exists at the time of my death * * **.'' So that if Hume, at the time he died, on March 21, 1952, had divested himself of his interest and title in such land as described in the mineral deeds and, on the day he died, was no longer the owner of such interests, Furness was not entitled to the moneys paid on such mineral deed and it, properly, went to the estate.

As said by this court in Rist v. Toole County, 117 Mont. 426, 159 Pac. (2d) 340, 342, 162 A. L. R. 406: ''It is well settled that the title to mineral interests in land, including oil and gas

interests, may be segregated in whole or in part from the rest of the fee-simple title (Krutzfeld v. Stevenson, et al., 86 Mont. 463, 284 Pac. 553; Broderick v. Stevenson Consolidated Oil Co.; 88 Mont. 34, 290 Pac. 244; Hodgkiss v. Northland Petroleum Consolidated, 104 Mont. 328, 67 Pac. (2d) 811)''.

The record shows that the mineral deeds were delivered by the grantor Hume to the grantees, which delivery was followed by recording in the county clerk and recorder's office, which publicly, while Hume was still alive, ''solemnly declared to all the world that [Hume] had vested [his] grantees with a clear title, free from any lawful claim, not only by [him], but by any other person whomsoever. Rev. Codes [1907], sec. 4621 [R. C. M. 1947, sec. 67-1610].'' Dubbels v. Thompson, 49 Mont. 550, 143 Pac. 986, 988.

The fact that the drafts indicated that the balance of the purchase price did not have to be paid for 30 days after sight ''subject to approval of title,'' could not defeat the effect of the delivery of such deeds, which was to deprive Hume of the interests conveyed thereby, because ''A grant [the mineral deeds] cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery is made.'' R. C. M. 1947, sec. 67-1511. See Walsh v. Kennedy, 115 Mont. 551, 147 Pac. (2d) 425. See also, Plymale v. Keene, 76 Mont. 403, 247 Pac. 554.

''As a general rule, a delivery of a deed must be absolute and unconditional, unless it is in escrow. Further, as appears in the [30] C. J. S. title Escrows sec. 7, also 21 C. J., p. 873 note 96-p. 878 note 31, a delivery in escrow may be made only to a third person not a party to the transaction, and there can be no such delivery to the grantee upon a condition not expressed in the instrument. Accordingly, while there is some authority to the contrary, it is generally held that the delivery to the grantee of a deed absolute on its face will pass complete title to him regardless of any condition or contingency on which its operative effect is made to depend * * *.'' 26 C. J. S., Deeds, sec. 48, p. 251.

"A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor." R. C. M. 1947, sec. 67-1509.

The deeds from Hume to Birdwell and Boren, grantees, and to Rayburn, grantee, took effect, were consummated, and became operative by the final act of delivery. See Springhorn v. Springer, 75 Mont. 294, 243 Pac. 803.

"A deed is consummated by its delivery by the grantor and its acceptance by the grantee, and becomes operative from that time. In other words, when the time of delivery is established, the time when the deed took effect is also established as a matter of law." 16 Am. Jur., Deeds, sec. 321, p. 620.

For the reasons stated the orders appealed from were properly made and are hereby affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES BOTTOMLY, ANGSTMAN and ANDERSON, concur.