ROY JOHNSON, Plaintiff and Appellant, v. The UN-KNOWN HEIRS, Unknown Devisees and Unknown Creditors of SARAH C. FRISBIE, Deceased; MARGARET E. LEACH, Formerly Known as Margaret E. Frisbie, and T. A. LEACH, her Husband, et al., Defendants and Respondents.

No. 10266.
Submitted November 9, 1961. Decided January 31, 1962.
368 P.2d 577.

Russell K. Fillner, argued orally, Forsyth, for appellant.
F. F. Haynes, argued orally, Forsyth, for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment and decree quieting title in the defendants to an undivided one-fourth interest in minerals in a half section of land in Rosebud County, Montana.

Plaintiff, appellant here, filed a complaint seeking to quiet title to a half section of land, the complaint asserting title by adverse possession. Plaintiff is a resident of the state of Missouri.

Two named defendants, Margaret E. Leach and her husband, T. A. Leach are residents of Kamiah, Idaho, and appeared in

the cause and filed an answer denying the complaint generally. By reply the plaintiff alleged that defendants' claim was groundless and barred by laches in that defendants had failed to pay taxes since 1930; and further that in May of 1955, the defendants had agreed to convey to the plaintiff any interest that they had but had failed to make a complete conveyance and are barred by laches and said agreement to convey from asserting any interest.

Plaintiff had obtained title, by deed recorded in the year 1930, to a three-fourths undivided interest in the land involved. On May 26, 1955, Margaret Leach and her husband, T. A. Leach, executed a deed on a Missouri warranty deed form to all of their undivided one-fourth interest in and to the real property with a reservation, viz., "all mineral, natural gas and oil rights reserved."

It is this above-mentioned deed that gives rise to the controversy on this appeal. At the trial, plaintiff testified and introduced certain documents. The defendants introduced the one exhibit, the deed with the reservation clause, and rested.

The trial court made findings of fact and conclusions of law. The findings of fact are in part as follows:

"VI. That the plaintiff, Roy Johnson, received said deed and accepted the same and caused the same to be recorded * * * in Rosebud County, Montana, and * * * after recording, it was returned to the plaintiff * * *.

"VII. That prior to the execution of the deed * * * the plaintiff, * * * attempted to negotiate with the defendants, * * * and made certain offers to purchase from the defendants * * * in connection therewith the plaintiff, Roy Johnson, deposited the sum of $350.00, which was a counter offer to an offer made by the defendants, Leach, to sell said property for $500.00 and that the plaintiff, Roy Johnson, deposited $350.00 in escrow in a local Missouri bank and advised the defendants Leach of the offer and the deposit and forwarded a deed to the defendants Leach to be executed by

them in return for the consideration of $350.00 offered by the plaintiff, Roy Johnson.

"VIII.   That the aforesaid Warranty Deed of May 26, 1955, constituted a clear and absolute severance of the mineral, natural gas and oil rights connected with the one-fourth interest in [the described land].

"IX.   The Court finds that at no time was there ever instituted by the plaintiff, Roy Johnson, or on his behalf, an action for the reformation of said deed to conform to any alleged claims made by the plaintiff Johnson to the oil, gas and mineral rights contained in said deed introduced in evidence in this case.

"X.   That at no time from the date of said instrument, being the 26th day of May, 1955, to the time of the trial of said cause herein, did the plaintiff, or anyone in his behalf, perform any overt act such as drilling or mining or exploration in connection with said oil, gas and mineral rights.

"XI.   That up to the time of filing the complaint herein on March 24, 1959, * * * the plaintiff Johnson was negotiating with the defendants Leach in an attempt to obtain the mineral rights which he claims were his by adverse possession, and further that the defendants Leach refused to accept any assertion of claim or right or to accept any offer made by the plaintiff Johnson in connection therewith."

From these findings of fact the court concluded as a matter of law that the plaintiff had not established adverse possession to the mineral rights; and further that in a general action in quieting title such as here by adverse possession, a reformation of a deed on grounds set forth in plaintiff's reply cannot be had.   The court further found that the overt act of negotiation by plaintiff during the period following the acceptance of the deed with the reservation of the mineral rights, constituted an estoppel against any cause of action except by a specific action for reformation of the deed as a condition precedent to the assertion of such rights.

The specifications of error asserted by plaintiff all, as expressed by plaintiff, relate to the same general subject except for the question of estoppel set forth above. The plaintiff expresses the primary question as "(1) Is an action for reformation of deed exclusive, or put another way, (2) may not a plaintiff in an equitable action to quiet title where he claims title by adverse possession and by purchase agreement show that the deed executed was not in conformity with the agreement of the parties."

The respondents, defendants below, on the other hand assert that the question is, "can an action in adverse possession instituted and tried upon that theory alone, with all of the evidence going to establish adverse possession by payment of taxes on the surface lands, control, possession, sub-leasing, etc., have any effect upon a one-fourth mineral reservation expressly reserved in a deed and thereby severed entirely from the lands against which the adverse action was instituted and proof made."

We are aware that in a quiet title action we have held as recently as Schumacher v. Cole, 131 Mont. 166, 169, 170, 309 P.2d 311, following Sanborn v. Lewis and Clark County, 113 Mont. 1, 120 P.2d 567, the court has power "including the power to remove clouds from the title and to cancel instruments of title as incidental and as may be necessary to the main purpose of quieting the title."

However, before any consideration of the deed is even necessary, and it is hardly *"incidental"* under the circumstances here, the plaintiff must necessarily prove his case of adverse possession.

Under the familiar rule that if the conclusion of the trial court is correct, it is immaterial what reasons were assigned for it (See Dubie v. Batani, 97 Mont. 468, 479, 37 P.2d 662, and cases cited) we shall examine the trial court's conclusion that the plaintiff had not established adverse possession to the mineral rights.

Heretofore we set forth the pleadings in which merely by reply the plaintiff brought in somewhat "left-handed" the reservation of minerals in the deed in question, having full knowledge of his own recording of his own deed. Under these circumstances we think the primary question is expressed by respondent above. That the issue was presented thus to the trial court is further proven by counsel's statement "If it please the court, of course this is the contention of the plaintiff that there has been no severance and that the taxes were paid on the property as assessed, which includes the minerals."

These facts appear from the record without contradiction: The defendants received a deed from the plaintiff; they refused to accept the deed as prepared; they changed the deed by inserting the name of T. A. Leach, the husband, and by inserting also a reservation of one-fourth of the oil, gas and mineral rights. They then returned this deed to the escrow agent. The escrow agent notified the plaintiff. The plaintiff told the escrow agent to accept the deed and send the money in payment to the defendants. A week or more thereafter the plaintiff got the deed and forwarded it to Rosebud County for recording. He got the recorded deed back and thereafter, some four or five months later, discovered the reservation. Plaintiff then went through a series of negotiations extending over a period of approximately three years to obtain the reserved mineral rights. He deposited money in escrow and sent a quitclaim deed to the defendants in Idaho. They refused to execute the deed.

It should be noted that the deed with the reservation of minerals in defendants was recorded by plaintiff without any suggestion of fraud, mistake or accident. Even after the asserted discovery of the reservation (it was plain to anyone looking at the deed) some four or five months later, no action for reformation or otherwise was taken, but rather further negotiations were had by the plaintiff to secure a quitclaim deed.

Subsequently some three years later, the described quiet title action was begun.

As to the deed itself, plaintiff explained under oath that he did not discover the mineral reservation until some weeks later after the recorded instrument had been returned to him. Plaintiff further testified that his attorney had prepared the Missouri warranty deed, and that the name of the defendant husband, T. A. Leach, and the mineral reservation were inserted without his knowledge. It is obvious that when plaintiff had this deed prepared that he intended to have the husband as a signatory to the deed, in that the deed reflects the following language: "Margaret E. Leach and" which is written on the same typewriter that prepared the balance of the deed except for the addition of the name T. A. Leach and the reservation in question. These are in a conspicuously different type. Additionally the deed reads in the plural in its entirety and a part of the conveying clause in deed reads: "All of *our* undivided one-fourth interest". Appellant testified that the deed contained only the name of Margaret C. Leach, but the mute evidence of the deed itself demonstrates that it was prepared by plaintiff to include both wife and husband.

Addressing ourselves now to the question involved as to whether under the theory in which the pleadings were drawn and the evidence submitted there was sufficient proof of adverse possession in the plaintiff, the plaintiff asserts that he claims title to the entire undivided fee simple title by adverse possession and payment of the taxes for over thirty years. Yet, in 1955, plaintiff knew of and recognized the interest of defendants. It was plaintiff's action in purchasing defendants' interest that caused the severance of the mineral interest.

That title to mineral interests may be segregated has long been settled. (See In re Humes Estate, 128 Mont. 223, 228, 229, 272 P.2d 999.)

Appellant contends that he acquired all of the surface rights,

likewise the mineral rights by reason of the deed of May 26, 1955. Such is not the law.

Under Montana Constitutional provision, Art. XII, § 3, which provides the method of taxation of minerals upon an annual net proceeds, this Court in Lehfeldt v. Adams, 130 Mont. 395, 400, 303 P.2d 934, 937, held that:

"In order for plaintiff to acquire any right by adverse possession, it was incumbent upon him to show possession of the mine independently of the possession of the surface of the land for grazing or other purposes. In order to prevail upon that theory plaintiff must show actual possession of the mineral interest * * *."

Here the minerals were not and could not be assessed separately. Thus, under the circumstances here the plaintiff simply did not prove a case of adverse possession to the mineral interest. (For discussion of the proposition generally, see 58 C.J.S. Mines and Minerals, § 135, pp. 219 and 220.)

Appellant complains of minor, unrelated matters not pertinent to the issue and also complains of the findings of fact and conclusions of law. The court found the admitted fact that the appellant was in actual possession of the surface land and owned it in fee simple, but that it was not exclusive or adverse as to the mineral rights owned by the respondents. We do not find it necessary to consider further the other findings and conclusions not relevant or material to the decision.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.