THE HONORABLE FRANK DAVIS, District Judge, sitting in place of MR. JUSTICE GULBRANDSON,
dissents.
I dissent.
This case is not only one of first impression in Montana; it apparently is only one of two in the entire scope of Anglo-American law.
The majority opinion has disposed of this important case primarily on a real and an imaginative peripheral issue raised by the Intervenor State, e.g., the ownership of the stream bed of a navigable stream. I say “imagined” because the opinion actually injects a recreational concept of navigability which, at least up until now, has never been determined by this Court.
It seems to me that it is the duty of this Court to balance *208 the admitted interest of the State with the more fundamental issue of the long held concept of the nature of a severed mineral interest. That concept is so well settled that it is not going to disappear because the majority has failed to address it. Instead, this decision, in my opinion, will have a devastating impact on existing contractual obligations involving severed mineral interests. The problems are going to be unending. This Court is losing the opportunity to establish a needed precedent in an area so vital to this State’s important mining industry and the thousands of landowners who have opted, as has the Defendant here, to retain a valuable property right by severance.
It has long been the law in this State that mineral interests of all types could be segregated, both in whole and in part, from the fee simple estate. The practice is a common one, a valuable property right, and the subject of thousands of contracts, leases and related agreements. Johnson v. Unknown Heirs, 140 Mont. 128, 368 P.2d 577 (1962); Stokes v. Tutvet, 134 Mont. 250, 328 P.2d 1096 (1958); Voyta v. Clonts, 134 Mont. 156, 328 P.2d 655 (1958); In re Hume’s Estate, 128 Mont. 223, 272 P.2d 999 (1954); Rist v. Toole County, 117 Mont. 426, 159 P.2d 340 (1945); Krutzfeld v. Stevenson, 86 Mont. 463, 284 P. 553 (1930); Broderick v. Stevenson Consolidated Oil Co., 88 Mont. 34, 290 P. 244 (1930).
The majority is adopting as the law of this State, a divided Court’s decision from Oklahoma (Nilsen v. Tenneco Oil Company, 614 P.2d 36, 1980). In my judgment, this precedent is a weak reed for this Court to rely upon. The trial Court in Oklahoma had held that once a mineral estate had been severed, title to that estate could not be lost by accretion. The trial Court was reversed; but in a well reasoned, scholarly dissent by two Justices, the dissenters had this to say, which is most applicable to this Montana case:
“These estates are as separate as the fingers of the hand, or as two parcels of land. (Emphasis supplied.)
*209 “I would not do violence to the common law doctrine of accretion. It protects the right of the riparian or litoral owner to the accumulation of precious metals or stones on the bank of the stream as well as his right to the alluvial soil itself. But not so, separate mineral estates such as oil and gas that are locked deep in the bowels of the earth, for they are separate fingers, parcels or estates in the land.
“I would also make it clear that severed mineral interests may never increase their interest by the process of accretion.”
The Nilsen rationale which this Court is adopting was rejected by three other Oklahoma Justices in the later case of Ellis v. Union Oil Company of Cal, 630 P. 306 (Okl.1981). This later case involved other issues, but when it referred to the Nilsen decision, three of the Justices could not resist the opportunity to criticize it, as they should have.
It should also be pointed out that there is an unaddressed issue in the case at bar that was not before the Oklahoma Court in Nilsen. Montana has long recognized that while unextracted minerals are not taxable, the reservation of a right to enter upon the surface to explore is a taxable interest. Hurley v. Northern Pacific Railway Co., 153 Mont. 199, 455 P.2d 321 (1969); Lehfeldt v. Adams, 130 Mont. 395, 303 P.2d 934 (1956); Cranston v. Musselshell County, 156 Mont. 288, 483 P.2d 289 (1971); Northern Pacific Ry. Co. v. Musselshell County, 54 Mont. 96, 169 P. 53 (1917). The Defendant, Burlington Northern, and its predecessors have paid such taxes on the property involved in this action. This Montana rule of a separate taxable entity seems to confirm the long held separate and distinct estate concept and, in my opinion, should have been considered by this Court.
Finally, the Nilsen rationale should be viewed in the light of a decision from a satellite cradle of Anglo-American law, the Queen’s Bench Court of Alberta, Canada. A lake bed had dried up. Both the landowner and the Crown claimed ownership of the minerals beneath it. The owner’s theory *210 was that the dried up surface accreted to him under the common law doctrine, and that included the minerals. The Queen’s Court agreed, but said:
“If the Crown wished to retain its minerals while the lake was present it could have taken the separate title to those mines and minerals and disposed of them as it saw fit.” Re Eliason and Northern Alta Land Registration District, 115 D.L. R.3d 360, 6 W.W.R. 361 (Alberta Court of Queen’s Bench, 1980).
In summary, I would reverse the trial Court, adopt the general common law doctrine of accretion, but except from that doctrine a previously severed mineral estate. The common law rule of accretion was never intended to apply to a severed mineral estate, and the majority opinion cites no authority to the contrary other than the questionable and criticized Nilsen.
The State’s interests, real and fancied, should be subordinate to these severed and vested estates.
*211 [[Image here]]